**ILLINOIS FARMERS INSURANCE COMPANY, Appellant–Plaintiff,**

v.

**Gerry WIEGAND, Linda Wiegand, Timothy Slaughterbeck and Susan Slaughterbeck, Individually and as Next Friends of Emily Slaughterbeck, Appellees–Defendants.**

No. 79A05–0307–CV–349.

Court of Appeals of Indiana.

May 17, 2004.

Laura S. Reed, Riley Bennett & Egloff, Indianapolis, IN, Attorney for Appellant.

Michael J. Stapleton, Cheryl M. Knodle, Ball Eggleston Bumbleburg McBride Walkey & Stapleton, Carl J. Sandy, Lafayette, IN, Attorneys for Appellees.

## OPINION

SHARPNACK, Judge.

Illinois Farmers Insurance Company ("Insurer") appeals the partial denial of its motion for summary judgment against Gerry Wiegand, Linda Wiegand, Timothy Slaughterbeck and Susan Slaughterbeck, individually and as Next Friends of Emily Slaughterbeck (collectively, the "Defendants"), and the Defendants cross-appeal

the grant of partial summary judgment to Insurer. Insurer raises one issue, which we restate as whether the trial court erred by finding that the insurance policy does not exclude coverage for the Slaughterbecks' negligent supervision claim. The Defendants raise one issue, which we restate as whether the trial court erred by finding that the all-terrain vehicle ("ATV") involved in the accident that is the subject of this litigation is a "motor vehicle" as defined by the insurance policy. We affirm in part and reverse in part.

The relevant facts designated by the parties follow. On the night of August 25, 2000, Kayla Wiegand invited her friend Emily Slaughterbeck to her house in West Point, Indiana for a sleepover. Gerry and Linda Wiegand (the "Wiegands") own a Kawasaki four wheel ATV, which they had purchased in 1998 for snow removal and recreational use. Gerry Wiegand knew that Kayla would sometimes take her friends for rides on the ATV, but he did not instruct either Kayla or Emily regarding the proper use of the ATV. The next morning, Kayla drove a friend's ATV and Emily drove the Wiegands' ATV. After Emily and Kayla drove off of the Wiegands' property and onto a country road, Emily struck a tree, and suffered traumatic brain and facial injuries.

On March 27, 2001, Timothy Slaughterbeck and Susan Slaughterbeck (the "Slaughterbecks"), Emily's parents, filed a complaint for damages against the Wiegands, which alleged, in relevant part, that:

> The collision and resulting injuries and damages were the direct and proximate result of the negligence and fault of the [Wiegands] in one or more of, but not limited to, the following respects:
>
> a. Entrusting a dangerous instrumentality, e.g., an ATV, to an inexperienced child;

b. Failing to properly instruct Emily in the operation of the ATV;

c. Fail[ing] to supervise Emily in the operation of the ATV;

d. Fail[ing] to warn Emily of the dangers associated with the operation of the ATV;

e. Permitting and encouraging Emily to operate the ATV without any protective clothing or head gear;

f. Failing to inform and obtain the prior approval of Emily's parents prior to Emily operating the ATV.

Appellant's Appendix at 37.

The Wiegands have a homeowner's insurance policy through Insurer (the "Policy"). Insurer filed a complaint for declaratory judgment, alleging that there was no coverage under the Policy for the Slaughterbecks' claim for damages stemming from Emily's ATV accident. On April 2, 2002, Insurer filed a motion for summary judgment, arguing that there was no genuine issue of material fact that the Policy excludes coverage for Emily's injuries because: (1) the ATV is a motor vehicle as defined by the Policy; and (2) Emily's injuries arose out of the ownership, use, and entrustment of the ATV. The Defendants filed a cross-motion for summary judgment, arguing that the Policy did cover Emily's injuries because: (1) the Slaughterbecks' negligent supervision claim is not excluded by the Policy's motor vehicle exclusion; and (2) the ATV is not a motor vehicle.

The Policy provides that: "We do not cover: ... **Motor vehicles,** including their parts or accessories while in or on any **motor vehicle.**" *Id.* at 59 (emphasis in original). The Policy also provides that:

> We do not cover **bodily injury, property damage** or personal injury which:
>
> *     *     *     *     *     *

7. results from the ownership, maintenance, use, loading or unloading of:

\* \* \* \* \* \*

b. **motor vehicles**

8. results from the entrustment of ... **motor vehicles.... Entrustment means** the permission you give to any **person** other than you to use any ... **motor vehicles** ... owned or controlled by you.

*Id.* at 64–65 (emphasis in original). Paragraph eleven of the Policy defines motor vehicle as follows:

a. a motorized land vehicle, including a trailer, semi-trailer or motorized bicycle, designed for travel on public roads.

b. Any vehicle while being towed or carried on a vehicle described in 11a.

c. Any other motorized land vehicle designed for recreational use off public roads.

None of the following is a **motor vehicle.**

a. a motorized golf cart while on the golf course and used for golfing purposes.

b. A motorized land vehicle, not subject to **motor vehicle** registration, used only on an **insured location.**

c. Any watercraft or camp, home or utility trailer not being towed or carried on a vehicle described 11a.

*Id.* at 58 (emphasis in original).

After a hearing, the trial court issued an order granting part of Insurer's motion for summary judgment, which provided as follows:

The Court finds that there is a genuine issue of material fact as to whether the ATV is a motor vehicle and therefore denies summary judgment, without prejudice to renewal of the motion upon designation of additional evidence.... No evidence was designated to the Court as to the purpose for which the ATV in question was designed.

\* \* \* \* \* \*

The Court finds that there is a genuine issue of material fact concerning whether the negligent supervision claim is covered by the policy and therefore denies [Insurer's] motion for summary judgment on that issue.

*Id.* at 12–15. On October 22, 2002, Insurer filed a motion for partial summary judgment, alleging that the ATV is a motor vehicle pursuant to the Policy. In support of its argument, Insurer designated the affidavit of Seth Bayer, a licensed professional engineer, wherein Bayer concluded that:

\* \* \* \* \* \*

6. The 1997 Kawasaki KVF400A falls into the category of vehicles referenced as all-terrain vehicles or off-road vehicles as the police report indicates.

7. The 1997 Kawasaki KVF400A is typical of the ATV category of vehicle and was designed for off road purposes, including recreational use off public roads.

*Id.* at 184–185. The Defendants filed a response, reiterating the same arguments they had made in their reply to Insurer's motion for summary judgment. On May 23, 2003, after a hearing, the trial court issued an order granting Insurer's motion for partial summary judgment, finding that the ATV is a motor vehicle under the Policy. Insurer and the Defendants also requested that the trial court clarify whether there was coverage under the policy, as a matter of law, for the Slaughterbecks' negligent supervision claim. With regard to this issue, the trial court's order provided:

By way of clarification, given the designated evidence, there is coverage under the policy for the claim of negligent supervision. As the Court held in its previous summary judgment decision, negligent supervision is a separate tort in the State of Indiana as to which a person may be liable to a minor in his care, even if he would not be liable under theories of premises liability. To the extent that Emily Slaughterbeck's injury resulted from the Wiegands' negligent failure to supervise her, there is coverage.

*Id.* at 4.

Insurer then filed this appeal, arguing that the trial court erred by finding that the Slaughterbecks' negligent supervision claim is covered under the Policy. The Defendants cross-appealed, arguing that the trial court erred by finding that the ATV is a motor vehicle under the Policy.

▪ On appeal, the standard of review of a grant or denial of a motion for summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Corr v. Am. Family Ins.,* 767 N.E.2d 535, 537–538 (Ind.2002). The moving party must designate sufficient evidence to eliminate any genuine factual issues, and once the moving party has done so, the burden shifts to the nonmoving party to come forth with contrary evidence. *Shambaugh & Son, Inc. v. Carlisle,* 763 N.E.2d 459, 460–461 (Ind.2002). The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party. *Id.* The fact that the parties have made cross-motions for summary judgment does not alter our standard of review. *Metal Work-*

*ing Lubricants Co. v. Indianapolis Water Co.,* 746 N.E.2d 352, 355 (Ind.Ct.App. 2001).

▪ The issues raised by Insurer and the Defendants require us to analyze the language of the Policy. "The construction of an insurance contract is a question of law for which summary judgment is particularly appropriate." *State Farm Mut. Auto. Ins. Co. v. Gonterman,* 637 N.E.2d 811, 813 (Ind.Ct.App.1994). When the policy language of an insurance contract is clear and unambiguous, we will give the language its plain and ordinary meaning. *Eli Lilly & Co. v. Home Ins. Co.,* 482 N.E.2d 467, 470 (Ind.1985), *cert. denied,* 479 U.S. 1060, 107 S.Ct. 940 (1987). An insurance policy is ambiguous if reasonable persons may honestly differ as to the meaning of the policy language. *Id.* We interpret policy terms from the perspective of an ordinary policyholder of average intelligence. *Asbury v. Ind. Union Mut. Ins. Co.,* 441 N.E.2d 232, 237 (Ind.Ct.App. 1982). Where there is ambiguity, an insurance policy must be strictly construed against the insurer. *Am. States Ins. Co. v. Kiger,* 662 N.E.2d 945, 947 (Ind.1996), *reh'g denied.* This is particularly true where a policy excludes coverage. *Id.*

▪ An insurer's duty to defend its insureds is broader than its coverage liability or duty to indemnify. *Trisler v. Ind. Ins. Co.,* 575 N.E.2d 1021, 1023 (Ind.Ct. App.1991). However, we determine the insurer's duty to defend from the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation. *Id.* If the pleadings reveal that a claim is clearly excluded under the policy, then no defense is required. *Id.*

In order to resolve this matter, we must examine two issues: (I.) whether the trial court erred by finding that the ATV is a

motor vehicle under the Policy; and (II.) whether the trial court erred by finding that the Slaughterbecks' negligent supervision claim is covered under the Policy. We will address each issue separately.

## I.

The first issue is whether the trial court erred by finding that the ATV is a motor vehicle under the Policy. The Defendants argue that the trial court erred by finding that the ATV is a motor vehicle under the Policy. Specifically, the Defendants argue that the trial court erred by considering the affidavit of Seth Bayer because it does not satisfy the criteria set forth in Ind. Evidence Rule 702.[1] Moreover, notwithstanding the Defendants' argument that the trial court erred by considering the Bayer affidavit, the Defendants argue that Insurer failed to designate any evidence proving that the ATV was designed as a recreational vehicle. The Defendants also insist that even if the ATV satisfies the definition of motor vehicle found in paragraph 11c of the Policy, it is excluded from the definition of a motor vehicle because it is a "motorized land vehicle, not subject to motor vehicle registration, used only on an insured location." Appellant's Appendix at 58.

In order to address the Defendants' argument on cross-appeal that the trial court erred by finding that the ATV is a motor vehicle as defined by the Policy, we must address two issues: (1) whether the trial court erred by considering Bayer's affidavit; (2) whether the trial court erred by finding that the ATV is a motor vehicle as defined by the Policy.

## A.

■ First, we will address whether the trial court erred by considering Bayer's affidavit. In *Doe v. Shults–Lewis Child and Family Servs., Inc.,* 718 N.E.2d 738 (Ind.1999), our supreme court discussed the requirements for expert affidavits in the context of motions for summary judgment. There, our supreme court held that:

[A]n expert opinion affidavit submitted in a summary judgment proceeding, in addition to asserting admissible facts upon which the opinion is based, must also state the reasoning or methodologies upon which it is based. The reliability of the scientific principles need not be established, but the trial court must be provided with enough information to proceed with a reasonable amount of confidence that the principles used to form the opinion are reliable. The trial court is in the best position to make such determinations, as it is in the trial court that the issue may be fully explored. This approach both allows the trial court to perform its gatekeeping function at the summary judgment stage of the proceedings and avoids placing an onerous burden upon the nonmoving party.

*Id.* at 750–751. Our supreme court added, that in order to raise a genuine issue of material fact, an expert's opinion must do more than assert bald conclusions or supply a "bottom line." *Id.* at 751.

Here, Bayer's affidavit indicates that Bayer is a licensed professional engineer who was familiar with the design of ATV's.

---

1. Ind. Evidence Rule 702 provides:
   (a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
   (b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

Bayer concluded that "[t]he 1997 Kawasaki KVF400A falls into the category of vehicles referenced as all-terrain vehicles or off-road vehicles as the police report indicates," and "[t]he 1997 Kawasaki KVF400A is typical of the ATV category of vehicle and was designed for off road purposes, including recreational use off public roads." Appellant's Appendix at 184–185. The affidavit also includes the reasoning and methodologies upon which Bayer ultimately formed his opinions. For example, the affidavit states that Bayer based his opinions on: (1) his education, training, and experience; (2) his familiarity with the design intent of ATV's; (3) his review of the accident report; (4) his review of Kawasaki product information; (5) his review of the September 13, 2000 Consumer Product Safety Commission News; and (6) his review of an ATV Connection magazine article entitled "Kawasaki 400 Extended Test." Further, Bayer's curriculum vitae outlines his sixteen-year career as a consulting and mechanical engineer, and indicates that his current area of expertise is in "ski area, skiing, snowboarding, motorcycle, motor vehicle and snowmobile accident reconstruction." *Id.* at 191.

Based upon our review of Bayer's affidavit, we conclude that the affidavit satisfies the requirements outlined by our supreme court in *Doe*, 718 N.E.2d at 750–751. Specifically, Bayer included admissible facts upon which his opinion was based. He also provided the reasoning upon which he ultimately formulated his conclusions. Moreover, the trial court was provided "with enough information to proceed with a reasonable amount of confidence that the principles used to form the opinion [were] reliable." *Id.* at 750–751. Accordingly, the trial court did not err by considering Bayer's affidavit.

### B.

■ Next, we will address whether the trial court erred by finding that the ATV is a motor vehicle under the Policy. The trial court held that the ATV involved in Emily's accident is a motor vehicle under the Policy. Specifically, the trial court's order provided that:

Under this definition, a vehicle designed for travel on the public roads, even one capable of travel or recreational use off the public roads, is a "motor vehicle." A vehicle which is designed only for work off the public roads, such as a tractor, a combine, or a lawnmower, would not be a "motor vehicle." An off-road motorcycle, or "dirt bike," would be a "motor vehicle," because it is designed for recreational use off the public roads.

The exceptions contained in the second half of the definition remove certain vehicles under certain usages from the definition of "motor vehicle." Thus, a golf cart used on the golf course for golfing purposes is covered; a golf cart used on the golf course for non-golfing purposes is not covered; a golf cart used off the golf course for golfing purposes is not covered. A motorized land vehicle not subject to motor vehicle registration used only on an insured location is covered. A motorized land vehicle, not subject to motor vehicle registration, used both on an insured location and elsewhere is not covered. A camp trailer not being towed or carried on a motor vehicle is covered.

The instrumentality at issue in this case, an ATV, shares some characteristics of a tractor and some characteristics of a dirt bike. The evidence designated to the Court demonstrates that the ATV is designed for both work functions, such as snowplowing, and recreational functions, such as off-road pleasure riding. The Court finds, as a matter of law, based upon the evidence designated to the Court, that the ATV at issue is a

"motor vehicle" because it is "designed for recreational use off public roads" (as well as for other purposes), and that it was not "used only on an insured location."

The Court grants partial summary judgment to [Illinois Farmers], and finds that, as a matter of law, the ATV at issue in this matter is a "motor vehicle" within the policy definition. Therefore, there is no coverage under the policy for any claims of negligent use or negligent entrustment.

*Id.* at 9–10.

The Defendants argue that the trial court erred by finding that the ATV is a motor vehicle as defined under the Policy. The Defendants argue that the ATV was not designed for recreational use, and insist that according to the plain reading of the Policy, the ATV is not a motor vehicle. Insurer suggests that the trial court correctly found that the ATV is a motor vehicle as defined by the policy, and because this issue is a matter of first impression in Indiana, Insurer suggests that *Farm Family Mut. Ins. Co. v. Whelpley,* 54 Mass.App.Ct. 743, 767 N.E.2d 1101 (2002) and *DeWitt v. Nationwide Mut. Fire Ins. Co.,* 109 Ohio App.3d 716, 672 N.E.2d 1104 (1996) are instructive.

The Policy language that defines motor vehicle is clear and unambiguous, and, therefore, we will give the language its plain and ordinary meaning. Paragraph 11c of the Policy defines a motor vehicle as a "motorized land vehicle designed for recreational use off public roads." Appellant's Appendix at 58. Bayer's affidavit provides that "[t]he 1997 Kawasaki DVF400A falls into the category of vehicles referenced as all-terrain vehicles or off-road vehicles as the police report indicates," and "[t]he 1997 Kawasaki KVF400A is typical of the ATV category of vehicle and was designed for off road pur-

poses, including recreational use off public roads." *Id.* at 184–185. Therefore, based upon the plain and ordinary meaning of the Policy, the ATV is a motor vehicle as defined by the Policy. *Id.* at 58.

Furthermore, because this is a matter of first impression in Indiana, we agree with Insurer that *Farm Family Mut. Ins. Co. v. Whelpley,* 54 Mass.App.Ct. 743, 767 N.E.2d 1101 (2002) and *DeWitt v. Nationwide Mut. Fire Ins. Co.,* 109 Ohio App.3d 716, 672 N.E.2d 1104 (1996) are instructive. *Whelpley* and *DeWitt* both involved ATV accidents and declaratory judgment actions addressing whether an ATV was a motor vehicle under the policy. In *Whelpley,* the policy defined a recreational motor vehicle as "any motorized vehicle designed for recreation, principally used off public roads, and whether licensed for road use or not." *Id.* The Massachusetts Court of Appeals held that the ATV was a motor vehicle under the policy, noting:

> In common usage, an ATV is defined as "[a] small, open motor vehicle having one seat and three or more wheels fitted with large tires. It is designed chiefly for recreational use over roadless, rugged terrain." American Heritage Dictionary of the English Language 50 (3d ed.1992). Aside from the fact that the ATV was being used for recreational purposes at the time of the accident and regardless of the use to which the defendant put his ATV, the ATV comports with the policy's definition of a "recreational motor vehicle" as a motorized vehicle designed for recreational use, principally off public roads.

*Id.* Likewise, in *DeWitt,* the policy defined motor vehicle as:

> [A] motorized land vehicle . . . designed for recreational use off public roads, while off an insured location.

*Id.* at 1106. The trial court held that "language in the exclusions clause is clear

and unambiguous and that an ATV falls within the policy definition of 'motor vehicle.' " *Id.* at 1107. The appeals court affirmed, holding that "an ATV is a motorized vehicle designed for recreational use off public roads." *Id.* Similar to the policies in *DeWitt* and *Whelpley,* the Policy, here defines a motor vehicle, in part, as a "motorized land vehicle designed for recreational use off public roads." Appellant's Appendix at 58. Likewise, here, like the ATV's in *Whelpley* and *DeWitt,* the ATV involved in this matter is also a motor vehicle.

Finally, the Defendants argue that even assuming the ATV is a motor vehicle because it is a "motorized land vehicle designed for recreational use off public roads," the Policy also provides that "[a] motorized land vehicle, not subject to motor vehicle registration, used only on an insured location," is not a motor vehicle. However, the Defendants argue that the ATV was intended to be used only on the insured location, even though it had been driven off the Wiegands' property at least one time. We disagree. Because at the time of the accident that is the subject of this litigation the ATV was being driven off of the insured location, it is undisputed that the ATV was not "used only on the insured location." The designated evidence also indicates that the ATV was not driven only on the Wiegands' property. Therefore, we agree with the trial court that the ATV at issue "is a 'motor vehicle' because it is 'designed for recreational use off public roads' (as well as for other purposes), and that it was not 'used only on an insured location.' " *Id.* at 10. Accordingly, the trial court did not err by granting Insurer's motion for partial summary judgment on this issue.

## II.

 The next issue is whether the trial court erred by finding that the Slaughter-

beck's negligent supervision claim is covered under the Policy. As previously mentioned, the Policy excludes coverage for bodily injury or personal injury which:

7. results from the ownership, maintenance, use, loading or unloading of:

   \*    \*    \*    \*    \*    \*

  c. **motor vehicles**

8. results from the entrustment of ... **motor vehicles....** Entrustment means the permission you give to any **person** other than you to use any ... **motor vehicles** ... owned or controlled by you.

Appellant's Appendix at 64–65 (emphasis in original). The trial court first addressed the negligent supervision issue in its June 7, 2002 order, which provided, in part, that:

The Court finds that there is a genuine issue of material fact concerning whether the negligent supervision claim is covered by the [Policy] and therefore denies the [Insurer's] motion for summary judgment on that issue. Under *Johnson v. Pettigrew,* 595 N.E.2d 747, 753 (Ind.Ct.App.1992), the negligent failure to supervise minor children is a separate cause of action from premises liability. In that case, the minor child threw gasoline on a fire on the landowner's property. The parents of the child sued the landowner for both premises liability and failure to supervise. The Court held that the minor child was aware of the danger and therefore that the premise liability claim had to fail. However, the Court held that the landowner had undertaken a duty to supervise the minor child and therefore denied summary judgment on that ground.

*Wright v. American States Insurance Co.,* 765 N.E.2d 690 (Ind.Ct.App.2002) is only marginally applicable. That case holds that the negligent entrustment of

an automobile to an incompetent driver falls under the auto-use exclusion of the policy at issue in that case. It cannot be read to hold that if the daycare center which owned the van in that case had allowed the daycare center's minor clients to drive the van that the clients' subsequent injuries would not be covered. Instead, under *Wright,* the crucial issue is the "efficient and predominating cause of the injuries." See 765 N.E.2d at 697.

On this record there is a genuine issue of material fact as to whether the efficient and predominating cause of Emily's injury was the negligent supervision of Emily by the Wiegands or the negligent use of the ATV by Emily. Supporting this finding is *United States Fidelity and Guarantee [Guaranty] v. State Farm Mutual Automobile Insurance Co.,* [107 Ill.App.3d 190, 63 Ill.Dec. 14], 437 N.E.2d 663 (1982), where the Illinois Court of Appeals held that negligent failure to supervise children who fell from an automobile was within the coverage of an insurance policy despite the automobile exclusion. That case was discussed in *State Farm Fire and Causality [Casualty] Co. v. Mann,* [172 Ill. App.3d 86, 122 Ill.Dec. 130, 526 N.E.2d 389] (1988) which pointed out that the complaint in *United States Fidelity* "alleged negligent acts of the daycare center which are separate and apart from the alleged negligence involving the center's vehicle." [172 Ill.App.3d at 92, 122 Ill.Dec. 130, 526 N.E.2d 389].

*Id.* at 14–15. Insurer and the Defendants requested that the trial court clarify this issue in its May 23, 2003 order, which the trial court did. The May 23, 2003 order provided, in relevant part, that:

By way of clarification, given the designated evidence, there is coverage under the policy for the claim of negligent

supervision. As the Court held in its previous summary judgment decision, negligent supervision is a separate tort in the State of Indiana as to which a person may be liable to a minor in his care, even if he would not be liable under theories of premises liability. To the extent that Emily Slaughterbeck's injury resulted from the Wiegands' negligent failure to supervise her, there is coverage.

*Id.* at 4.

On appeal, Insurer argues that the trial court erred by finding that the Slaughterbecks' negligent supervision claim is not excluded by the Policy. Specifically, Insurer argues that, because each of the Slaughterbecks' claims allege acts of negligence arising out of the operation of the ATV, all of the Slaughterbecks's claims, including their negligent supervision claim, are excluded by the Policy. In particular, Insurer argues that "without the ownership, use and entrustment of the ATV, there would be no lawsuit because there would be no injury." Appellant's Brief at 12.

In *Wright v. Am. States Ins. Co.,* 765 N.E.2d 690, 695, we addressed the issue of whether an auto use exclusion barred coverage for a claim of negligent supervision. There, a child died and another was injured as a result of injuries they sustained while riding as passengers in a van driven by a day care center employee. The children's parents brought an action against the day care, alleging, among other things, that the day care was negligent by failing to investigate its employee's driving record and by employing an incompetent driver with a suspended license. *Id.* at 695. The day care center's insurer then brought a declaratory judgment action to determine whether it owed a duty to defend and provide coverage. *Id.* The policy excluded:

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

*Id.* at 693–694. The insurer filed a motion for summary judgment, arguing that it did not have a duty to indemnify or defend the day care center because the children's injuries arose from the "ownership, maintenance, use or entrustment" of the day care center's van. The trial court granted the insurer's motion, and on appeal, we held that:

> In the case at bar, we agree with the trial court that the efficient and predominating cause of the injuries was [the employee's] use of the van. Without the use of the van, there would be no lawsuit. [The plaintiffs] are not alleging that [the day care's] failure to investigate [the employee's] driving record, or its employment of an incompetent driver with a suspended license was a separate or independent proximate cause of the harm. The immediate and efficient cause of [the children's] injuries and the [plaintiffs'] claims arising from those injuries is [the employee's] use of the automobile.

*Wright,* 765 N.E.2d at 692, 697.

Here, as previously mentioned, the trial court attempted to distinguish *Wright,* noting,

> *Wright v. American States Insurance Co.,* 765 N.E.2d 690 (Ind.Ct.App.2002) is only marginally applicable. That case holds that the negligent entrustment of an automobile to an incompetent driver falls under the auto-use exclusion of the policy at issue in that case. It cannot be read to hold that if the daycare center which owned the van in that case had allowed the daycare center's minor

clients to drive the van that the clients' subsequent injuries would not be covered. Instead, under *Wright,* the crucial issue is the "efficient and predominating cause of the injuries."

Appellant's Appendix at 14–15. The trial court, relying upon *Wright,* found that negligent entrustment of a vehicle to an incompetent driver would fall under the auto exclusion provision of an insurance policy, while negligent entrustment of a vehicle to an incompetent driver who is also a minor client would not fall under the auto exclusion provision of an insurance policy. *Wright* does not create this distinction because, in both scenarios, injuries result from the use or operation of a motor vehicle. The Slaughterbecks complaint alleges that the Wiegands "[failed] to supervise Emily in the operation of the ATV." *Id.* at 37. *Wright* is applicable to this matter, because, like the plaintiffs in *Wright,* the Slaughterbecks' negligent supervision claim is excluded by the Policy because the "immediate and efficient cause of [Emily's] injuries and [the Slaughterbecks'] claims arising from those injuries is [Emily's] use of the [ATV]," and without the use of the ATV, there would be no claim for negligent supervision. *Id.* at 697. Therefore, *Wright* is not distinguishable, and the trial court erred by finding that the Slaughterbeck's negligent supervision claim is covered under the Policy.

Several other jurisdictions have also considered the issue of whether the claim of negligent supervision of the use of a motor vehicle is excluded by a motor vehicle exclusion within a homeowner's policy. For example, in *Taylor v. Am. Fire & Cas.,* 925 P.2d 1279, 1282 (Utah Ct.App. 1996), *cert. denied,* 936 P.2d 407 (1997), the Utah Court of Appeals noted, "[s]ome jurisdictions have concluded that coverage exists for negligent supervision even though a motor vehicle was the underlying

cause of the injuries and the policies contained exclusions similar to those in this case." The appeals court added that "[t]he rationale in this line of cases is that a claim of negligent supervision is separate and distinct from the operation, use, ownership, et cetera of the motor vehicle and, therefore, the motor vehicle exclusion does not preclude coverage." *Id; see also Grinnell Mut. Reinsurance Co. v. Employers Mut. Cas. Co.,* 494 N.W.2d 690, 694 (Iowa 1993); *Smith v. USAA Cas. Ins. Co.,* 532 So.2d 1171, 1174 (La.Ct.App.1988). However, the Utah appeals court also recognized that:

> [a] majority of jurisdictions have adopted the contrary position. These cases reason that where the negligent supervision is so inextricably intertwined with the motor vehicle, there is no independent nonauto-related act which would take the claim outside the scope of the motor vehicle exclusionary clause. Thus, negligent supervision claims are excluded from coverage where the acts complained of could not have resulted in injury but for the use of the automobile.

*Taylor,* 925 P.2d at 1282–1283; *see also Phillips v. Estate of Greenfield,* 859 P.2d 1101, 1106 (Okla.1993); *Daus v. Marble,* 270 N.J.Super. 241, 636 A.2d 1091, 1096 (1994).

▇▇▇ As in *Wright,* we find the majority line of reasoning to be more persuasive, and hold that a negligent supervision claim, like the one here, is excluded from coverage where the injury would not have resulted but for the use of the motor vehicle. Therefore, based upon our review of the record and the applicable case law, we conclude that the trial court erred by granting the Defendants' cross-motion for summary judgment and by finding that the Slaughterbecks' negligent supervision claim is covered under the Policy. *See, e.g., Wright,* 765 N.E.2d at 697 (holding

that the plaintiff's negligent supervision claim was excluded by the policy because the cause of the children's injuries arose from the use of the automobile). Accordingly, the trial court erred by granting the Defendants' cross-motion for summary judgment on this issue.

We also note that the trial court, in granting the Defendants cross-motion on this issue, relied upon two Illinois Court of Appeals cases: *USF & G v. State Farm Mut. Auto. Ins. Co.,* 107 Ill.App.3d 190, 63 Ill.Dec. 14, 437 N.E.2d 663 (1982), and *State Farm Fire & Cas. Co. v. Mann,* 172 Ill.App.3d 86, 122 Ill.Dec. 130, 526 N.E.2d 389 (1988). Insurer argues that the trial court erred by relying upon these cases, which are inconsistent with our line of reasoning in *Wright.* We agree.

In *USF & G,* the Illinois Court of Appeals addressed whether a claim of negligent supervision was excluded by the motor vehicle exclusion of an insurance policy. *Id.* The appeals court held that the plaintiff's negligent supervision claim was not excluded by the policy because it was separate and distinct from the allegations relating to the negligent operation of the motor vehicle. In 1992, the Seventh Circuit, applying Illinois law, discussed the limited applicability of *USF & G,* holding that:

> *USF & G* must be read together with *Allstate Insurance Co. v. Pruitt ex rel. Pruitt,* [177 Ill.App.3d 407, 126 Ill.Dec. 716, 532 N.E.2d 401 (1988) ], which limits the applicability of the *USF & G* principle to cases in which the two causes of injury are wholly independent of one another.

*Transamerica Ins. Co. v. South,* 975 F.2d 321, 330 (7th Cir.1992). Furthermore, in *Mann,* the Illinois Court of Appeals also recognized the limited holding of *USF & G.* Here, the trial court cited *Mann* in its June 7, 2002 order, noting that *Mann* "pointed out that the complaint in [*USF &*

*G* ] 'alleged negligent acts of the daycare center which were separate and apart from the alleged negligence involving the center's vehicle.'" Appellant's Appendix at 15. *Mann* also addressed the issue of whether the motor vehicle exclusion of an insurance policy excluded a claim of negligent supervision. *Mann* distinguished *USF & G*, noting that *USF & G* "limited its holding to cases where the actionable event could be proved independent of the excluded motor vehicle." *Id.* at 393. The appeals court added that in the instant matter the plaintiff had not made an allegation of negligent supervision that could be proved independent of the excluded motor vehicle. *Id.* Likewise, here, the Slaughterbecks have not alleged a claim of negligent supervision that is independent of Emily's operation of the ATV. *Mann* is not supportive of the trial court's June 7, 2002 order, and the trial court erred by relying upon both *USF & G* and *Mann.*[2]

In summary, we hold that the trial court did not err by granting Insurer's motion for partial summary judgment and finding that the ATV is a motor vehicle as defined in the Policy. We also hold that the trial court erred by granting the Defendants' cross-motion for summary judgment and finding that the Policy did not exclude the Slaughterbecks' negligent supervision claim.

For the foregoing reasons, we affirm the judgment of the trial court finding that the ATV is a motor vehicle under the Policy, and we reverse the judgment of the trial court finding that the Slaughterbeck's neg-

ligent supervision claim is covered under the Policy.

Affirmed in part and reversed in part.

MATHIAS, J. and VAIDIK, J. concur.

---

**2.** The Defendants also rely upon *W. Am. Ins. Co. v. Hinze,* 843 F.2d 263 (7th Cir.1988). However, *Hinze* is distinguishable from this matter. Even though, in *Hinze,* the Seventh Circuit held that the insurer was required to defend a negligent supervision claim under its homeowner's policy, the plaintiff had made a claim of negligent supervision that was separate and distinct from negligence involving the motor vehicle. *Id.* at 267. Here, as previously mentioned, the Slaughterbecks' negligent supervision claim is not separate and distinct from the negligence involving the motor vehicle. Appellant's Appendix at 37.