**AMERISURE, INC., Appellant–Defendant,**

v.

**WURSTER CONSTRUCTION CO., INC., Appellee–Plaintiff.**

**No. 49A04–0402–CV–106.**

Court of Appeals of Indiana.

Dec. 10, 2004.

Stephen J. Peters, David I. Rubin, Indianapolis, IN, Attorneys for Appellant.

Troy M. Miller, Thomas A. Pastore, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Amerisure, Inc. appeals the trial court's entry of summary judgment in favor of Plaintiff–Appellee Wurster Construction Co., Inc.[1]

We reverse.

### ISSUE

Amerisure presents one issue which we restate as: whether the trial court erred by granting Wurster's motion for summary judgment and by denying Amerisure's motion for summary judgment and finding coverage under Wurster's policy with Amerisure.

---

**1.** We would like to note the outstanding quality of the briefs of both parties and commend them on a job well done.

*FACTS AND PROCEDURAL HISTORY*

The material facts are not in dispute. Wurster is an Indiana corporation engaged in the business of providing construction services as a general contractor. Amerisure is an insurance company from whom Wurster purchased a commercial general liability ("CGL") coverage policy. In late 2000, Wurster entered into contracts with White Oaks Shops, L.L.C. and Greendale, L.L.C. for two construction projects, including installation of the exterior sheathing ("Dens-glas") and the exterior insulation finish system ("EIFS") for the projects. Wurster then entered into contracts with subcontractors to complete the work at these projects. Following completion of the projects, Wurster received notice to commence and/or continue corrective work to repair and replace the EIFS, including the Dens-glas. Wurster notified Amerisure of these claims, but Amerisure denied coverage.

In 2003, Wurster filed an action for declaratory judgment against Amerisure. Amerisure later filed its motion for summary judgment to which Wurster filed a response as well as a cross motion for summary judgment. Following a hearing on all motions for summary judgment, the trial court entered its order denying Amerisure's motion and granting Wurster's cross motion for summary judgment. Amerisure then initiated this appeal.

*DISCUSSION AND DECISION*

Amerisure contends that the trial court erred by entering summary judgment in favor of Wurster and denying its motion for summary judgment. Particularly, Amerisure asserts that Wurster's CGL policy provides coverage only for bodily injury or property damage caused by an occurrence. In this particular CGL policy, and in CGL policies generally, an "occurrence" is defined as an "accident." Amerisure avers that no accident occurred in this case to trigger coverage under the policy.

■ Upon review of the grant or denial of a motion for summary judgment, we apply the same standard as that used in the trial court: summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Illinois Farmers Ins. Co. v. Wiegand,* 808 N.E.2d 180, 184 (Ind.Ct.App.2004), *trans. denied; see* Ind. Trial Rule 56(C). The moving party bears the burden of designating sufficient evidence to eliminate any genuine factual issues, and once the moving party has fulfilled this requirement, the burden shifts to the nonmoving party to come forth with contrary evidence. *Shambaugh & Son, Inc. v. Carlisle,* 763 N.E.2d 459, 461 (Ind.2002). We do not reweigh the evidence. *Metal Working Lubricants Co. v. Indianapolis Water Co.,* 746 N.E.2d 352, 355 (Ind.Ct.App.2001). Instead, the court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts in favor of the nonmoving party. *Wiegand,* 808 N.E.2d at 184. The fact that the parties have made cross-motions for summary judgment does not alter our standard of review. *Metal Working Lubricants Co., id.* Rather, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

■ The construction of an insurance policy is a question of law for which summary judgment is particularly appropriate. *Wiegand, id.* Insurance policies are contracts that are subject to the same rules of construction as are other contracts. *Ramirez v. American Family Mut. Ins. Co.,* 652 N.E.2d 511, 514 (Ind.Ct.App.1995). When the language of an insurance con-

tract is clear and unambiguous, we will assign to the language its plain and ordinary meaning. *Wiegand, id.* An insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer's liability. *Ramirez, id.* Thus, we may not extend insurance coverage beyond that provided by the unambiguous language in the contract. *Shelter Ins. Co. v. Woolems,* 759 N.E.2d 1151, 1155 (Ind.Ct.App.2001), *trans. denied.* Moreover, insurers have the right to limit their coverage of risks and, therefore, their liability by imposing exceptions, conditions, and exclusions. *American Family Mut. Ins. Co. v. Federated Mut. Ins. Co.,* 775 N.E.2d 1198, 1206 (Ind.Ct. App.2002). However, to be enforced, these limitations must be clearly expressed and must be consistent with public policy. *West Bend Mut. v. Keaton,* 755 N.E.2d 652, 654 (Ind.Ct.App.2001), *trans. denied; see also American Family Mut. Ins. Co., id.*

 An insurance contract will be deemed ambiguous only if reasonable people would honestly differ as to the meaning of its terms. *Ramirez, id.* However, an insurance contract is not regarded as ambiguous simply because controversy exists, and the parties have asserted contrary interpretations of the language of the contract. *Puryear v. Progressive Northern Ins. Co.,* 790 N.E.2d 138, 139–40 (Ind.Ct. App.2003), *trans. denied.* We also note that where provisions limiting or excluding coverage are ambiguous, they are to be construed in favor of the insured in order to further the basic purpose of indemnity. *Associated Aviation Underwriters v. George Koch Sons, Inc.,* 712 N.E.2d 1071, 1076 (Ind.Ct.App.1999), *trans. denied.*

 The resolution of the present case turns on whether there has been "bodily injury" and/or "property damage" caused by an "occurrence" as these terms are used and defined in the CGL policy at issue. The relevant portions of the parties' insurance contract are as follows:

**SECTION I—COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

\* \* \* \* \* \*

**b.** This insurance applies to "bodily injury" and "property damage" only if:

 **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory". . . .

Appellant's Appendix at 25.

The parties agree that there is no claim for bodily injury and that Wurster is claiming coverage for damages at the two building sites with regard to the defective "Dens-glas" and EIFS. As evidenced by the language of the insurance contract set out above, in order for coverage to apply there must be property damage that is caused by an occurrence. These terms are key to our decision, and we will discuss each in turn.

The pertinent portion of the parties' contract defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property." Appellant's Appendix at 37. Notably, the use of this terminology in a CGL policy is not a novel incident; rather, this is standard language for CGL policies in this country. *R.N. Thompson & Associates, Inc. v. Monroe Guar. Ins. Co.*, 686 N.E.2d 160, 162 (Ind.Ct.App.1997), *trans. denied.*

■■ *R.N. Thompson* is one of the first cases in this state to discuss the breadth of coverage in a standard CGL policy. Thompson built and developed a portion of a residential development, and the homeowners' association later sued Thompson. The association sought repair and/or replacement of defectively designed and constructed units. The allegations of defects included degradation of the plywood used for a portion of the roof, improperly vented attics, and substandard construction of the roof system. This Court held that Thompson was not covered under the CGL policy because the claim of the homeowners' association was based upon the faulty workmanship of Thompson. The Court determined that the claim of faulty workmanship did not involve property damage or an occurrence, as those terms were defined in the CGL. In making its determination, this Court followed the great weight of authority stating that the risk intended to be insured by a CGL policy is "the possibility that the goods, products, or work of the insured, once relinquished or completed, will cause bodily injury or damage to property *other than* to the product or completed work itself," and, for which injury or damage, the insured might be exposed to liability. *Id.* at 162 (emphasis in original). *See also Aetna Life & Cas. v. Patrick Industries, Inc.*, 645 N.E.2d 656, 660 (Ind.Ct.App.1995), *reh'g*

*denied, trans. denied; Indiana Ins. Co. v. DeZutti*, 408 N.E.2d 1275, 1279 (Ind.1980); *Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 405 A.2d 788, 791 (1979). Thus, "[t]he coverage is for tort liability for physical damages to others, and not for contractual liability of the insured for economic loss suffered because the completed work is not what the damaged person bargained for." *Id.*

The construction of CGL insurance contracts such as the one at issue is based upon two types of risk arising from a contractor's work. The first, business risk, is a result of not performing well (i.e., faulty work) and is borne by the contractor in order to satisfy its customers. *Id.; see also Weedo*, 405 A.2d at 791. The second type of risk is occurrences which give rise to insurable liability. These occurrences are accidental injury to persons or property due to faulty workmanship. *Id.; see also Weedo*, 405 A.2d at 791. In other words, a business risk arises when, for example, "a craftsman applies stucco to an exterior wall of a home in a faulty manner and discoloration, peeling and chipping result," the poorly-performed work must be repaired or replaced by the contractor. *Id.* at 162–63 (*quoting Weedo*, 405 A.2d at 791). On the other hand, "should the stucco peel and fall from the wall, and thereby cause injury to the homeowner or his neighbor standing below or to a passing automobile, an occurrence of harm arises" which is covered under a CGL policy. *Id.* at 163 (*quoting Weedo*, 405 A.2d at 791–92). Therefore, "injury to persons and damage to *other* property constitute the risks intended to be covered under the CGL." *Id.* at 163 (emphasis added).

In the present case, Wurster asserts that because the Dens-glas and the EIFS failed, the buildings were "damaged" and this constitutes damage to *other* property as mandated by the definition of the term

"property damage." Although creative, this argument fails. The designated materials show that the Dens-glas and the EIFS were defective and failed. However, there are no allegations that any person or property, *other than* these interconnected systems on the buildings being constructed by Wurster, was damaged due to these defects. As we stated above, CGL policies cover the risk of damage to property *other than* the project itself. *See R.N. Thompson*, 686 N.E.2d at 162. Thus, the damage to Wurster's projects due to faulty workmanship or defective materials does not involve "property damage" as that term is defined and used in Wurster's CGL policy.

■■■ We now turn to the second key term in this case. Wurster's CGL policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Appellant's Appendix at 36. In addition to its contention that there has been no property damage, Amerisure asserts that there has been no accident, and therefore no occurrence, to trigger coverage in this case. On the other hand, Wurster claims that the failure of the Dens-glas and EIFS was an unexpected happening and, therefore, it is an accident such that the loss is covered under the policy.

Our case law in this area is limited, so we look to other jurisdictions for guidance, in addition to the few existing Indiana cases. The Indiana case to which we give primary consideration is *R.N. Thompson, supra.* The CGL policy at issue in *R.N. Thompson* defines the term "occurrence" in precisely the same terms as the policy at issue in the present case, utilizing the term "accident." *See R.N. Thompson*, 686 N.E.2d at 164. There this Court adopted, for use in the milieu of insurance coverage, the definition of the term "accident" as "'an unexpected happening without an intention or design.'" *Id.* (*quoting Terre*

*Haute First Nat. Bank v. Pacific Employers Ins. Co.*, 634 N.E.2d 1336, 1338 (Ind. Ct.App.1993)). With these definitions in place, we determined that the degradation of the plywood in *R.N. Thompson* was "the natural and ordinary consequence of the work done by Thompson or under its supervision." *Id.* at 165. We determined this was not an "accident" but was instead a breach of contract arising from faulty workmanship and defective materials. Thus, because there was no "accident" and therefore no "occurrence," there was no insurable loss.

In fact, the majority of courts have determined that faulty workmanship is not an accident and, therefore, not an occurrence. *See e.g., Indiana Insurance Company v. Hydra Corp.*, 245 Ill.App.3d 926, 185 Ill.Dec. 775, 615 N.E.2d 70 (1993) (cracks in floor and loose paint were natural and ordinary consequences of installing defective concrete flooring and applying wrong type of paint and did not constitute an accident); *Hawkeye–Security Insurance Co. v. Vector Construction Co.*, 185 Mich.App. 369, 460 N.W.2d 329 (1990) (defective workmanship was not the result of an occurrence); *Heile v. Herrmann*, 136 Ohio App.3d 351, 736 N.E.2d 566 (1999) (determining that homeowners' claims against contractor for defective workmanship did not arise from an occurrence where alleged damages all related to contractor's or subcontractors' work); *Pursell Construction, Inc. v. Hawkeye–Security Insurance Co.*, 596 N.W.2d 67 (Iowa 1999) (holding that "defective workmanship standing alone, that is, resulting in damages only to the work product itself, is not an occurrence under a CGL policy"); *McAllister v. Peerless Insurance Company*, 124 N.H. 676, 474 A.2d 1033 (1984) (determining that defective work, standing alone, did not result from an occurrence).

Similar to the facts in the case at hand, *Hydra Corp.* involved a contract between B.K. and Hydra where Hydra was to build an industrial building for B.K. Following the completion of the building, B.K. sued Hydra after cracks appeared in the concrete floor and the paint on the exterior of the building began to peel. The court determined there was no occurrence because the cracking floors and peeling paint were not an accident but rather were the natural and ordinary consequences of the acts of installing defective concrete flooring and applying the wrong type of paint.

Here, the EIFS and the Dens-glas have failed due to defective workmanship. The failure of these interconnected systems is the natural and ordinary consequence of the defective work done by Wurster or under its supervision. Yet, "[t]he natural and ordinary consequences of an act do not constitute an accident." *Hydra Corp.*, 185 Ill.Dec. 775, 615 N.E.2d at 73. The materials on appeal reveal no damage other than to the EIFS and the Dens-glas system, which both parties agree are defective and need to be repaired and replaced. In its brief, Wurster states that the failure of these systems poses a "very real source of *potential* personal injuries"; however, it is not alleged that any injuries have actually occurred. Appellee's Brief at 34 (emphasis added). Thus, consistent with the analysis and holding of *R.N. Thompson* as well as the majority of jurisdictions outside our state, we hold that defective workmanship that results in damages only to the work product itself is not an occurrence under a CGL policy.

▆▆▆▆ Because Wurster's claim fails the definitional requirements of the terms "property damage" and "occurrence" in order for coverage to apply, we do not reach the applicability of the various policy exclusions. However, for clarification, we further note Wurster's assertion that cov-erage exists based upon a 1986 revision to the standard CGL policy exclusions. One result of these revisions is an exclusion that provides coverage for certain property damage resulting from work performed for the insured by a subcontractor. The provision Wurster relies on for its argument in this instance is merely an exception to an exclusion and therefore is incapable of providing coverage. An exception to an exclusion cannot create coverage where none exists. Exclusion clauses do not grant or enlarge coverage; rather, they are limitations on the insuring clause. *DeZutti*, 408 N.E.2d at 1278 (clearing up the misconception that an exception to an exclusion grants coverage). In simplistic terms, the process is such: if the insuring clause does not extend coverage, one need look no further. If coverage exists, exclusions must then be considered. If an exclusion excludes coverage, an exception to the exclusion may re-grant coverage. However, the entire process must begin with an initial grant of coverage via the insuring clause; otherwise, no further consideration is necessary. Therefore, in the present case, we do not address any arguments regarding exclusions or exceptions to exclusions because here there is no initial coverage due to the lack of "property damage" and an "occurrence."

## CONCLUSION

Based upon the foregoing analysis and authorities, we conclude that there was neither "property damage" nor an "occurrence" as those terms are defined in Wurster's CGL policy. Therefore, the definitional requirements for coverage were not met. In addition, because there was no initial coverage, we need not look to the exclusions or exceptions to exclusions contained in the policy. Thus, the trial court erred in determining that coverage existed and entering summary judgment for Wur-

ster and denying summary judgment for Amerisure.

Reversed.

KIRSCH, J., and CRONE, J., concur.