**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANTS:

**T. EDWARD PAGE**
Thiros and Stracci, PC
Merrillville, Indiana

ATTORNEYS FOR APPELLEES:

**RICHARD L. McOMBER**
**DAVID I. RUBIN**
Harrison & Moberly, LLP
Indianapolis, Indiana

**FILED**
Jun 24 2014, 9:00 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

ERIC GARVER, BRIAN GARVER, and )
DAWN SHEPHERD, )
 )
    Appellants-Defendants, )
 )
        vs. )    No.  64A03-1307-PL-292
 )
IDS PROPERTY CASUALTY )
INSURANCE COMPANY, )
 )
    Appellee-Plaintiff. )

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable William E. Alexa, Judge
Cause No. 64D02-1207-PL-7045

**June 24, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

### Case Summary and Issues

Eric Garver, Brian Garver, and Dawn Shepherd (collectively, "the Garvers")[1] appeal the trial court's grant of summary judgment in favor of IDS Property Casualty Insurance Company ("IDS") and its denial of the Garvers' summary judgment motion. The Garvers raise two issues for our review, which we restate as: whether the Garvers' claim under the IDS automobile insurance policy is subject to the per person limit of $250,000 or per accident limit of $500,000; and whether their claim is excluded from coverage under the IDS homeowner insurance policy. Concluding the trial court correctly determined the policy limit at $250,000 and the homeowner policy excluded further payment of damages claimed by the Garvers, we affirm.

### Facts and Procedural History

On October 22, 2011, Eric was at Colin Colvin's home with Colvin's minor son, A.C. Colvin was home, but elsewhere in the house, when A.C. and his younger brother allegedly consumed beer from their father's bar. During the early hours of October 23, A.C. took the keys to his father's BMW and drove himself, his brother, Eric, and another friend to a nearby town. A.C. crashed the car into a clump of trees, and Eric was severely injured in the accident. Colvin had both an automobile insurance policy ("auto policy") and a homeowner insurance policy ("homeowner policy") with IDS at the time of the accident. It is undisputed that Colvin and A.C. each qualified as an "insured person" under the terms of each policy.

---

[1] Eric is Brian and Dawn's son, who was a minor at the time of the accident.

2

The auto policy provided that bodily injury liability coverage under the policy was limited to $250,000 for each person and $500,000 for each accident. The relevant language of the auto policy is as follows:

**Definitions Used Throughout this Policy**
Bodily injury means bodily harm, sickness or disease, including death that results. . . .
***
**Limits of Liability**
The bodily injury liability limit for each person is the maximum we will pay as damages for bodily injury, including damages for care and loss of service, to one person in one occurrence. . . .We will pay no more than these maximums regardless of the number of vehicles described in the declarations, insured persons, claims, claimants, policies or vehicles involved in the occurrence.
***
**Additional Definitions Used In This Part Only**
Insured person means . . . any other person occupying your insured car while being used by you, a relative or another person if that person has a reasonable belief of having permission to use the car.

Amended Appellants' Appendix at 39-42. The homeowner policy personal liability coverage was limited to $300,000 per occurrence and medical payments to others was limited to $2,000 per person. The relevant language of the homeowner policy is as follows:

**Definitions Used Throughout this Policy**
Bodily injury means bodily harm, sickness or disease, and includes required care, loss of services and resulting death.
***
**Personal Liability Coverage**
We will pay all sums arising out of any one occurrence which an insured person becomes legally liable to pay as damages because of bodily injury or property damage covered by this policy. . . .

**Medical Payments to Others Coverage**
We will pay the reasonable expenses incurred for medical, surgical, x-ray and dental services, prosthetic devices, eye glasses, hearing aids and pharmaceuticals, and ambulance, hospital, licensed nursing services and funeral services. . . .

3

Each person who sustains bodily injury is entitled to this protection when that person is: . . . (2) elsewhere, if the bodily injury: a) arises out of a condition on the insured premises . . . b) is caused by the activities of an insured person. . . .

*** 

**Exclusions**

Under Personal Liability Coverage and Medical Payments to Others Coverage, we do not cover . . . [b]odily injury or property damage arising out of the ownership, maintenance, use, operation, loading or unloading of or entrustment to anyone by an insured person of or parental liability imposed by law for the actions of a minor using . . . a land motor vehicle designated for use on public roads . . . owned or operated by or rented or loaned to an insured person.

Appendix at 62, 72-73.

In April 2012, the Garvers filed suit against Colvin for damages arising out of this accident, including claims for Eric's physical injuries and Brian's and Dawn's loss of services. In July 2012, IDS filed a complaint for declaratory judgment against the Garvers to determine the award the Garvers might receive based on policy limits. IDS then filed a motion for summary judgment on its complaint, and the Garvers filed a cross-motion for summary judgment. On May 3, 2013, the trial court held a hearing on the motions for summary judgment and eventually granted summary judgment in favor of IDS, determining the coverage under the auto policy was limited to $250,000 and there was no coverage under the homeowner policy. The Garvers now appeal.

Discussion and Decision

I. Standard of Review

We apply the same standard of review as the trial court when we review a motion for summary judgment ruling on appeal. Presbytery of Ohio Valley, Inc. v. OPC, Inc., 973

4

N.E.2d 1099, 1110 (Ind. 2012), <u>cert. denied</u>, 133 S. Ct. 2022 (U.S. 2013). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The party that lost before the trial court has the burden of persuading us on appeal that the trial court erred in its ruling on summary judgment. <u>Bradshaw v. Chandler</u>, 916 N.E.2d 163, 166 (Ind. 2009). The interpretation of an insurance policy is a question of law. <u>Id.</u> When the policy language is clear and unambiguous, we will give the language its plain and ordinary meaning. <u>Illinois Farmers Ins. Co. v. Wiegand</u>, 808 N.E.2d 180, 184 (Ind. Ct. App. 2004), <u>trans. denied</u>. We interpret policy terms from the perspective of an ordinary policyholder of average intelligence. <u>Bradshaw</u>, 916 N.E.2d at 166. When, as here, the claimant is a third party and not the insured under the contract, we determine the general intent of the contract from a neutral stance. <u>Burkett v. Am. Family Ins. Grp.</u>, 737 N.E.2d 447, 452 (Ind. Ct. App. 2000).

## II. Auto Policy Limits

Brian and Dawn argue their claims for loss of service are separate and distinct injuries from those suffered by Eric during the accident, and the $500,000 per accident limitation, instead of the $250,000 per person limitation, should apply. They contend the following language, particularly the phrase "each person," from the auto policy is ambiguous: "The bodily injury liability limit for each person is the maximum we will pay as damages for bodily injury, including damages for care and loss of service, to one person in one occurrence." Appendix at 41. This ambiguity, they argue, may be read to mean that the "each person" limitation is the maximum that will be paid to one person based on a bodily

5

injury, but that there may be many claims (up to the maximum $500,000) based on one person's bodily injury. We disagree.

In Medley v. Frey, 660 N.E.2d 1079 (Ind. Ct. App. 1996), trans. denied, Charles and Mary Medley were in an automobile accident. Charles, who was Mary's caretaker, was permanently injured. In addition to their claims for physical injuries, Mary sued for loss of consortium since Charles could no longer care for her. The automobile liability policy at issue stated: "The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of 'bodily injury' sustained by any one person in any one accident." Id. at 1080-81. Bodily injury was defined as "bodily harm, sickness or disease, including death that results," and loss of consortium and services was not a bodily injury as defined in the policy. Id. at 1080.

This court reasoned that by the terms of the insurance policy, Mary's claim for loss of consortium was not an independent bodily injury, but instead arose out of Charles's bodily injury and the per person limit, not the per accident limit, applied. Id. at 1081. Central to the decision was the definition of bodily injury,

> noting that [w]here the automobile liability policy includes loss of consortium or loss of services in the definition of 'bodily injury,' courts have logically concluded that the deprived-spouse's loss of consortium claim is a distinct 'bodily injury' and is not subject to the per person liability limit applicable to the injured-spouse, but is a separate 'bodily injury' within the meaning of the policy.

State Farm Mut. Auto. Ins. Co. v. Jakupko, 881 N.E.2d 654, 658 (Ind. 2008) (quoting Medley, 660 N.E.2d at 1081 n.1) (quotation marks omitted).

The Garvers try to distinguish the Medley policy language from the IDS auto policy language based on the structure of the sentence in the policy. However, we find no meaningful difference that distinguishes this case from Medley. Here, as with loss of consortium in Medley, loss of services was not contained within the definition of bodily injury, and in fact, damages for loss of services were specifically included in the maximum limit of liability for each person. Brian's and Dawn's claims for loss of services arose out of the bodily injury Eric sustained and are therefore subject to the $250,000 per person limitation.

### III. Homeowner Policy Limits

The Garvers argument to recover under the homeowner policy is not that the motor vehicle was negligently entrusted by Colvin to A.C. Rather, they argue Colvin negligently failed to supervise A.C. by not preventing him from drinking alcohol at the home and by not preventing A.C. from operating Colvin's vehicle as required by law.[2] The Garvers further argue the homeowner policy does not exclude liability for the claim that A.C. gained unsupervised access to the vehicle at the home as a result of Colvin's negligence. The Garvers recognize the weight of controlling authority under similarly-worded homeowner policies is that a negligent entrustment claim is excluded from coverage where the alleged injury would not have resulted but for the use of the motor vehicle. See, e.g., Wiegand, 808 N.E.2d at 191; Wright v. American States Ins. Co., 765 N.E.2d 690, 697 (Ind. Ct. App. 2002). They argue that a negligent supervision claim is distinguishable when the driver does

---

[2] A.C. only had his learner's permit and was prohibited by law from operating a motor vehicle unless accompanied by a licensed driver at least twenty-one years old. See Ind. Code § 9-24-7-4.

not have permission or authority to drive, but cite no authority on this point.

We find Wiegand and Sharp v. Indiana Union Mut. Ins. Co., 526 N.E.2d 237 (Ind. Ct. App. 1988), trans. denied, instructive. In Wiegand, Kayla Wiegand was driving a friend's all-terrain vehicle ("ATV") and her friend, Emily Slaughterbeck, drove the Wiegands' ATV. Emily crashed the ATV into a tree and suffered traumatic brain and facial injuries. Emily's parents filed a complaint for damages, alleging in part that Kayla's parents negligently supervised the ATV's operation. The Wiegands had a homeowner policy which specified:

> We do not cover: . . . Motor vehicles, including their parts or accessories while in or on any motor vehicle. . . .We do not cover bodily injury, property damage or personal injury which . . .
> 7. results from the ownership, maintenance, use, loading or unloading of…motor vehicles
> 8. results from the entrustment of . . . motor vehicles. . . .Entrustment means the permission you give to any person other than you to use any . . . motor vehicles . . . owned or controlled by you.

808 N.E.2d at 182-83 (emphasis omitted). This court held that "a negligent supervision claim, like the one here, is excluded from coverage where the injury would not have resulted but for the use of the motor vehicle." Id. at 191. The negligent supervision claim was excluded by the policy because without the use of the ATV, there would have been no claim for negligent supervision. Id.

In Sharp, Richard Leinenbach drank alcohol over a two-day period within the confines of his home. Leinenbach then drove his vehicle on a state highway and crashed head-on into the Sharps' vehicle. Leinenbach had a homeowners insurance policy, which contained an automobile exclusion: "Coverage E-Personal Liability and Coverage F-Medical Payments to Others *do not apply* to bodily injury or property damage: (c) *arising out of the ownership,*

8

*maintenance, use, loading or unloading of: . . .* (2) *a motor vehicle, owned or operated by, or rented or loaned to any insured . . .*" 526 N.E.2d at 239 (emphasis omitted). The Sharps argued Leinenbach's intoxication was a separate and independent cause of Sharp's injuries and coverage should not be excluded under the policy. Id. at 240. The court assumed for argument's sake drinking to the point of intoxication in one's own home constituted negligence and held that still was not enough to overcome the automobile exclusion as a separate cause of action because his drinking did not cause any injury which was independent of the use of the motor vehicle. Id.

Eric was injured in the car accident due to A.C. driving into a clump of trees. Eric had no injury that was independent of A.C.'s use of the vehicle. Because the efficient and predominant cause of Eric's injuries was A.C.'s use of the automobile, the harm from the negligent supervision was "inextricably intertwined" with the use of the vehicle, and any claims based on negligent supervision of A.C. are subject to the automobile use exclusion under the homeowners policy. Wiegand, 808 N.E.2d at 191.

## Conclusion

Concluding the trial court correctly determined the auto policy limit at $250,000 and the homeowner policy excluded further payment of damages, we affirm.

Affirmed.

RILEY, J., and BRADFORD, concur.

9