AMERICAN STANDARD INSURANCE
COMPANY OF WISCONSIN,
Appellant–Plaintiff,

v.

Cicily E. ROGERS and Eric Roberts,
Appellees–Defendants.

No. 49A05–0209–CV–446.

Court of Appeals of Indiana.

May 20, 2003.

Eric D. Johnson, Knightlinger & Gray, LLP, Indianapolis, IN, Attorney for Appellant.

Michael E. Simmons, Hume Smith Geddes Green & Simmons, LLP, Indianapolis, IN, Attorney for Appellees.

## OPINION

FRIEDLANDER, Judge.

American Standard Insurance Company of Wisconsin (American Standard) appeals the trial court's grant of summary judgment in favor of Cicily E. Rogers. American Standard presents the following restated issues for review:

1. Did the trial court err in granting summary judgment in favor of Rogers to the extent that it determined that American Standard waived its right to cancel Eric Wilson's policy (the Policy) for nonpayment of premiums?

2. Did the trial court err in granting summary judgment in favor of Rogers to the extent that it determined that the Policy remained in effect at the time of the collision between Rogers and Eric Roberts[1] due to American Standard's failure to strictly comply with Ind.Code Ann. § 27–7–6–5 (West 1993) in canceling the Policy?

We reverse.

On March 4, 1998, Rogers was operating a 1998 Ford Expedition, owned by Eric Wilson, southbound on Mitthoeffer Road in Indianapolis, Indiana. Rogers had Wil-

---

1. Roberts, a co-defendant, is an inactive party on appeal.

son's permission to use the Expedition on the day of the incident. At the same time, Roberts was driving a 1983 Chevrolet Caprice northbound on Mitthoeffer Road, approaching a bridge that crosses over Interstate 70. The two vehicles collided on the bridge, and Roberts allegedly suffered bodily injury and property damage. Roberts filed a lawsuit for recovery of damages, alleging negligence on the part of Rogers in the operation of Wilson's vehicle.

On May 28, 1994, American Standard issued a policy of automobile insurance to Wilson. Under the terms of the policy, American Standard would have been responsible for the defense and indemnification of Rogers, a permissive user of the Expedition. American Standard, however, contends that it cancelled Wilson's policy on January 8, 1998, before the date of the accident at issue.

On at least eight other occasions prior to the final cancellation in January, American Standard had cancelled and "re-issued" the Policy with no change in the policy number or coverage limits.[2] On November 11, 1997, Wilson added the Expedition involved in the collision as an "insured vehicle" under the American Standard policy, replacing his 1987 Oldsmobile Cutlass. On November 22, 1997, American Standard sent Wilson yet another cancellation letter which listed an "amount due" of $826.20. It recited that Wilson's policy would be cancelled on December 9, 1997, unless he remitted "the full amount shown." *Appendix* at 57. As he had done on almost all prior occasions, Wilson did not pay the total balance due for his automobile insurance premiums. Instead, a check in the amount of $225.04 was sent to Wayne D. Barber, his insurance agent, and credited by American Standard on December 8, 1997, leaving a past due amount of $601.16. On December 16, 1997, American Standard sent another notice reflecting the past due amount of $601.16 for coverage through January 8, 1998 and requesting payment in the amount of $360.64 for coverage beyond January 8, 1998. On December 24, 1997, American Standard sent cancellation letters both to its insured, Wilson, and his insurance agent, Barber, with an effective cancellation date of January 8, 1998. On December 29, 1997, Wilson submitted a payment in the amount of $374.30, and a "cancel hold" was placed on the Policy the next day. *Appendix* at 118. The purpose of the cancel hold was to prevent coverage from lapsing while payment was in transit between the agent and American Standard. If Wilson were to make the required payment before January 15, 1998, coverage would be deemed continuous. In effect, the cancel hold provided Wilson with seven additional days to make payment to American Standard before coverage would lapse. If Wilson failed to make the required payment before January 15, 1998, however, coverage would be terminated retroactive to January 8, 1998. After Wilson's payment of $374.30 on December 29, 1997, no further payments were made to his account.

In response to Roberts's claim for damages, American Standard filed a complaint seeking a declaratory judgment that the

**2.** The record reflects that on July 6, 1996, the Policy was cancelled and re-issued on the same day. On August 7, 1996, the Policy was cancelled and re-issued following payment on September 8, 1996. On November 7, 1996, the Policy was cancelled and re-issued on November 10, 1996. On January 7, 1997, the Policy was cancelled and re-issued on January ary 11, 1997. The Policy was cancelled on March 13, 1997 and re-issued on March 22, 1997. On May 22, 1997, the Policy was cancelled and re-issued on May 30, 1997. On July 31, 1997, the Policy was cancelled and re-issued on August 7, 1997. Finally, on October 7, 1997, the Policy was cancelled and re-issued on October 9, 1997.

Policy did not provide coverage for the accident between Rogers and Roberts. As the basis of its complaint, American Standard alleged that the Policy had been cancelled in January 1998, approximately two months before the March 4, 1998 accident. Subsequently, Rogers filed a motion for summary judgment arguing that American Standard's cancellation was ineffective because it failed to strictly comply with I.C. § 27–7–6–5. Rogers also argued that American Standard had waived its right to cancel the Policy and was estopped from asserting the defense. American Standard then filed a cross-motion for summary judgment arguing that the cancellation was effective. Following a hearing, the trial court denied American Standard's motion and granted Rogers's motion. American Standard now appeals.

On appeal from a grant of summary judgment, we apply the same standard applied by the trial court. Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our review, we do not reweigh the evidence, and we consider the facts in the light most favorable to the nonmovant. The appellant has the burden to prove that the trial court erred when it determined that there were no issues of material fact and that the appellee was entitled to judgment as a matter of law. *Circuit City Stores, Inc. v. Am. Nat. Ins. Co.*, 779 N.E.2d 62, 65–66 (Ind.Ct.App. 2002) (citations omitted). "In addition, where, as here, the parties filed cross-motions for summary judgment, our standard of review is not altered. We merely

'consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law.' " *Id.* at 66 (citations omitted).

1.

We first address American Standard's argument that the trial court erred to the extent it determined that American Standard had waived its right to cancel the Policy for nonpayment of premiums. In her motion for summary judgment, Rogers argued that American Standard waived its right to cancel the Policy and is estopped from asserting the defense because it "accepted late premium payments by Wilson on numerous occasions and repeatedly 're-issued' his policy without loss of coverage." [3] *Appendix* at 95.

■ Initially, American Standard attempts to overcome Rogers's waiver argument by directing our attention to the "no-waiver" clause contained in the Policy. The clause states:

> This policy and the declarations include all the agreements between **you** and **us** relating to this insurance. No change or waiver may be effected in this policy except by endorsement issued by **us.**

*Appendix* at 129. In citing the no-waiver provision, American Standard contends that the Policy precludes the finding of any waiver without an endorsement issued by American Standard amending the Policy.

■ It is well settled that contractual provisions of an insurance policy may be waived or that the insurer may be estopped from asserting such provisions. *Gallant Ins. Co. v. Wilkerson,* 720 N.E.2d 1223 (Ind.Ct.App.1999). More specifically,

---

**3.** American Standard disputes Rogers's contention that there was no loss of coverage. American Standard maintains that while they did re-issue the Policy, there were periods where coverage was interrupted. Whether there was an actual lapse of coverage during these periods is irrelevant to our determination that American Standard did not waive its right to cancel the Policy based on its previous pattern of conduct.

provisions in an insurance policy providing for its forfeiture for nonpayment of the premiums is for the insurer's benefit, and may be waived. *Majestic Life Assur. Co. v. Tuttle,* 58 Ind.App. 98, 107 N.E. 22 (1914). Thus, we reject American Standard's contention that the no-waiver clause in the Policy immunizes it against application of the doctrines of waiver and estoppel.

While we acknowledge that an insurer's right to cancel an insurance policy for nonpayment can be waived notwithstanding a no-waiver provision, the record does not support the conclusion that American Standard waived its right to cancel the Policy based on its previous pattern of conduct.

■ Waiver is generally a question of fact. *Lumpkins v. Grange Mut. Companies,* 553 N.E.2d 871 (Ind.Ct.App.1990). Where there are no disputed facts and the undisputed facts establish a party is entitled to judgment as a matter of law, however, summary judgment is proper. *Id.* The burden to prove this defense is on the party who claims it. *van de Leuv v. Methodist Hosp. of Indiana, Inc.,* 642 N.E.2d 531 (Ind.Ct.App.1995).

■ "The term 'estoppel' has a meaning distinct from 'waiver' but the terms are often used synonymously with respect to insurance matters." [4] *United Services Auto. Ass'n v. Caplin,* 656 N.E.2d 1159, 1162–63 (Ind.Ct.App.1995), *trans. denied.* The existence of waiver may be implied from the acts, omissions, or conduct of one of the parties to the contract. *Id.* The conduct of an insurer inconsistent with an intention to rely on the requirements of the policy that leads the insured to believe that those requirements will not be insisted upon is sufficient to constitute waiver. *Gallant Ins. Co. v. Wilkerson,* 720 N.E.2d 1223.

■ In the instant case, American Standard sent a cancellation letter to Wilson on December 24, 1997. The letter indicated that $606.16 was due for coverage ending January 8, 1998. To continue coverage beyond January 8, 1998, Wilson owed an additional $352.64, for a total of $958.80. The letter further stated that a failure to remit the payment of $958.80 in full prior to the cancellation date of January 8, 1998 would result in an interruption in coverage. Although Wilson submitted a payment in the amount of $374.30 on December 29, 1997, he failed to pay the full amount prior to January 8, 1998. [5]

Rogers argues that "[o]n at least eight occasions prior to December 1997, American Standard had cancelled, and 're-issued' the Wilson policy with no apparent loss of coverage and no refund of policy premiums for the days the policy was purportedly 'cancelled.' " *Appellee's Brief* at 18. In each of the eight instances, Rogers contends that American Standard sent Wilson cancellation letters similar to the one sent on December 24, 1997, and in almost every instance, Wilson failed to make payments for the "full amount" before the date of cancellation. Based on this, Rogers maintains that Wilson expected the Policy to continue past January 8, 1998.

■ Unlike the prior cancellations noted by Rogers, American Standard did not re-

---

4. A waiver is an intentional relinquishment of a known right involving both knowledge of the existence of the right and the intent to relinquish it. *Gallant Ins. Co. v. Wilkerson,* 720 N.E.2d 1223. The elements of estoppel are the misleading of a party entitled to rely on the acts or statements in question and a consequent change of position to that party's detriment. *Id.*

5. Because of the "cancel hold", Wilson actually had until January 15, 1998 to pay the full amount without interruption in coverage.

issue the Policy to Wilson. Rather, on January 15, 1998, a notice of cancellation was sent to Wilson's agent. Marian L. Barber, Barber's wife and a licensed insurance agent in the State of Indiana, testified by affidavit that she telephoned Wilson following the receipt of the notice of cancellation to inform him that the Policy had lapsed. Marian then testified that Wilson indicated that he did not intend to renew the policy.[6] On February 13, 1998, American Standard further sent a reminder notice to Wilson indicating that the Policy had been cancelled as of January 8, 1998, and that a balance of $223.86 was currently past due on his account. The amount reflected a credit of $11.00 for the cancelled Policy. Following the January 8, 1998 cancellation, the Policy was not reissued to Wilson, and no further payments were made on Wilson's account following the December 29, 1997 payment of $374.30.

Based on this evidence, we cannot say that American Standard's conduct following the January 8, 1998 cancellation was inconsistent with its intention to rely on its right under the Policy to cancel for nonpayment of premiums. We are further unconvinced that despite American Standard's conduct in enforcing its rights, Wilson was led to believe that American Standard would not cancel his Policy and that it was in full effect on March 4, 1998, irrespective of his failure to update his account or pay any premiums for the period following January 8, 1998. As such, we reject Rogers's contention that American Standard waived its right to cancel the Policy.[7]

6. At trial, Rogers filed a Motion to Strike paragraph six of Marian L. Barber's affidavit. The trial court did not rule on the motion. In her appellate brief, Rogers renews her objection, claiming that the affidavit contains inadmissible hearsay.

> In her affidavit, Marian states:
> Approximately three weeks later, I again called the Wilson residence. Eric Wilson answered the telephone. I informed Mr. Wilson that the Policy had lapsed effective January 8, 1998, and I asked whether he intended to renew the Policy. Mr. Wilson informed me that he did not intend to renew the policy at the time.
> *Appendix* at 110.
> Under T.R. 56(E), affidavits supporting or opposing a summary judgment motion must be made upon the personal knowledge of the affiant, must affirmatively show that the affiant is competent to testify as to the matters covered in the affidavit and must set forth facts which would be admissible in evidence. As a general rule, a court should disregard any inadmissible information contained in the affidavit.
> *Bankmark of Florida, Inc. v. Star Fin. Card Serv., Inc.*, 679 N.E.2d 973, 980 (Ind.Ct.App. 1997) (citations omitted).
> Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of

the matter asserted. Ind. Evidence Rule 801(c). Hearsay is generally inadmissible. Evid. R. 802. A statement of a declarant's then-existing state of mind, however, is not excluded by the hearsay rule. Evid. R. 803(3). While we acknowledge that the statements made by Wilson were admitted to prove the truth of the matter asserted, Wilson's intention, such hearsay is admissible under the state of mind exception to the hearsay rule because the statement expressed Wilson's state of mind at the time, that he did not intend to renew the Policy. Wilson's statements regarding his intent were relevant, and we find no abuse of discretion in the admission of Marian's affidavit. Furthermore, any error resulting from consideration of that portion of the affidavit is harmless because Marian's testimony was merely cumulative of other evidence demonstrating Wilson's knowledge of the cancellation.

7. Rogers cites *Travelers Ins. Co. v. R & W Transp., Inc.*, 152 Ind.App. 164, 282 N.E.2d 554 (1972), in support of the proposition that American Standard's acceptance of partial payment after the December 24, 1997 cancellation letter constitutes a waiver of its right to insist on cancellation of the Policy. In *Travelers*, the insurer sent its first notice of cancellation on July 30, 1968. That same day, the notice of cancellation was withdrawn by a

We also conclude that any determination that American Standard is estopped from asserting the defense of cancellation is erroneous. The doctrine of estoppel springs from equitable principles, and it is designed to aid in the administration of justice where, without its aid, injustice might result. *Brokaw v. Roe*, 669 N.E.2d 1039 (Ind.Ct.App.1996), *trans. denied*. Use of the doctrine is not limited to circumstances involving an actual or false representation or concealment of an existing material fact. *Id.* Instead, equitable estoppel is available if one party through his course of conduct knowingly misleads or induces another party to believe and act upon his conduct in good faith and without knowledge of the facts. *Id.*

Here, Rogers presents no evidence to support the conclusion that American Standard, through its conduct, knowingly misled or induced Wilson to believe that the Policy was in full effect as of March 4, 1998. To the contrary, American Standard repeatedly informed Wilson that the Policy would be, and was, canceled effective January 8, 1998. There is no evidence to suggest that Wilson was not aware of the fact that the Policy was in fact cancelled or that he acted to his detriment based upon his misunderstanding that the Policy was in full effect. It would be inequitable to extend the Policy two months beyond January 8, 1998 when it is clear from the actions of both American Standard and Wilson that the Policy was

terminated prior to the date of the accident between Rogers and Roberts.

2.

American Standard also argues that the trial court erred in granting summary judgment in favor of Rogers to the extent that it found the Policy to be effective and enforceable on the date of the collision due to American Standard's failure to strictly comply with I.C. § 27-7-6-5 in canceling the Policy.

I.C. § 27-7-6-5 states:

No notice of cancellation of a policy to which section 4 of this chapter applies shall be effective unless mailed or delivered by the insurer to the named insured at least twenty (20) days prior to the effective date of cancellation; provided, however, that where cancellation is for nonpayment of premium at least ten (10) days notice of cancellation accompanied by the reason therefor shall be given. In the event such policy was procured by an agent duly licensed by the state of Indiana, notice of intent to cancel shall be mailed or delivered to such agent at least ten (10) days prior to such mailing or delivery to the named insured unless such notice of intent is or has been waived in writing by such agent. Unless the reason accompanies or is included in the notice of cancellation, the notice of cancellation shall state or be accompanied by a statement that upon written request of the named insured, mailed or delivered to the insurer

---

notice of reinstatement. On August 19, 1968, the insurer sent a second notice of cancellation which was not received by the insured. Approximately one month later, the insurer sent the insured a letter concerning the premiums due. The letter made no mention of cancellation. Subsequently, the insured submitted two checks totaling $3,069.50, which satisfied only part of the $4,604.00 that was actually due. This court concluded that there was sufficient evidence to support the jury's

verdict applying estoppel and waiver. Unlike the facts in *Travelers*, Wilson had notice of cancellation prior to his December 29, 1997 payment. Wilson was further notified that failure to remit the payment of $958.80 in full prior to the cancellation date of January 8, 1998 would result in an interruption in coverage. Following acceptance of the partial payment, American Standard continued to assert its right to cancellation. We find the instant case to be distinguishable from *Travelers*.

not less than fifteen (15) days prior to the effective date of cancellation, the insurer will specify the reason for such cancellation. This section shall not apply to nonrenewal.

In the instant case, American Standard sent a cancellation letter to both its insured, Wilson, and his insurance agent, Wayne D. Barber, on December 24, 1997, with an effective cancellation date of January 8, 1998. Although Wilson received the ten days notice required by statute, Rogers argues that cancellation was not effective based on American Standard's failure to provide Wilson's agent with notice "at least ten (10) days prior to such mailing or delivery to the named insured". I.C. § 27–7–6–5.

We find our recent opinion, *Krueger v. Western Reserve Group*, 780 N.E.2d 1199 (Ind.Ct.App.2003), instructive in the instant case. In *Krueger*, this court held that cancellation for nonpayment of premium was effective even though the insurer failed to comply with the statutory requirement of mailing notice of intent to cancel to the insured's agent. In reaching this decision, we concluded that the language of the statute evidenced a legislative intent not to require notice in strict compliance with the statute in order for cancellation to be effective. *Id.* By separating the provisions regarding notice to the insured and the advanced notice that should be provided to the agent, the legislature indicated its intent that notice to the insured be a mandatory condition necessary to achieve effective cancellation of the policy, whereas the failure to provide advance notice to the agent has no bearing on the effectiveness of the cancellation. *Id.* We further noted that the primary purpose behind the notice of cancellation provisions

in the statute is to provide the insured with sufficient notice of the company's intent to cancel the policy, thus affording him the requisite time to procure other sources of coverage. *Id.*

We conclude that requiring strict compliance with the statute in this case would not serve the intent of the legislature and the purpose of the statute. Wilson was given twenty-two days[8] to either extend his coverage with American Standard or procure another source of coverage. Providing Wilson's agent with advance notice of the cancellation would not have had any effect upon Wilson's action or inaction with regard to paying the premiums under the policy. Rather, we conclude that American Standard's notice to Wilson on December 24, 1997 afforded him ample opportunity to pay the premium or procure other insurance coverage. As such, cancellation was effective as of January 8, 1998. It is clear that Wilson was no longer insured by American Standard on the date of the collision involving Rogers and Roberts. Thus, there can be no liability on the part of American Standard, and it was clear error for the trial court to grant summary judgment in favor of Rogers. It follows from this conclusion that the trial court also erred in denying American Standard's motion for summary judgment. We therefore reverse and order the trial court to grant American Standard's motion for summary judgment.

Judgment reversed.

BROOK, C.J., and MATTINGLY–MAY, J., concur.

---

**8.** Although Wilson had until January 15, 1998 to prevent the Policy from lapsing, in the event that the Policy was cancelled, cancellation would be retroactive to January 8, 1998.

Based on this technicality, Wilson actually had only fifteen days to procure another source of coverage if he did not choose to extend his coverage under the Policy.