# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT

Karl N. Truman
Lonnie T. Cooper
Karl Truman Law Office, LLC
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Brett M. Haworth
David M. Henn
Henn Haworth Cummings
Greenwood, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Barbara L. Mack (individually) and Barbara L. Mack, Grandmother/Custodian and Next Friend of Jaylan N. Brown, a minor child | March 5, 2015 |
| *Appellants-Plaintiffs,* | Court of Appeals Case No. 10A01-1405-CT-221 |
| v. | Appeal from the Clark Circuit Court |
| Christine A. Amiott, Harold S. Burchfield, and Safe Auto Insurance Company, d/b/a Safe Auto | The Honorable J. Terrence Cody, Special Judge |
| *Appellees-Defendants* | Trial Court Case No. 10C01-0702-CT-53 |

**Mathias, Judge.**

Barbara Mack, individually, and as next friend of Jaylan Brown, a minor child, (collectively "Mack") appeal the Clark Circuit Court's entry of summary judgment in favor of Safe Auto Insurance Company ("Safe Auto") determining that Mack's uninsured motorist claim against Safe Auto is barred because it was not filed within the policy's two-year limitations period for claims arising under the uninsured motorist coverage.

We affirm.

## Facts and Procedural History

Barbara Mack is Coroy Brown's mother and Jaylan Brown's grandmother, and in 2006, they were allegedly residents of the same household. Coroy owned a Mazda Tribute, which was insured by Safe Auto. Mack was not listed as an additional driver on Coroy's Safe Auto insurance policy.

On September 21, 2006, while Mack was driving Coroy's vehicle and Jaylan was her passenger, Mack was involved in a two-car accident with a vehicle operated by Harold Burchfield ("Burchfield"). Burchfield was driving a vehicle owned by Christine Amiott ("Amiott"), and Amiott's vehicle was also insured by Safe Auto. Burchfield was a resident of Amoitt's household, but he was not listed as an additional driver on her Safe Auto insurance policy.

On December 28, 2006, Safe Auto denied Mack's claim against Coroy's Safe Auto insurance policy because Mack was not listed as an additional driver on Coroy's policy, and Safe Auto concluded that she was a resident of Coroy's household. Appellee's App. p. 8.

[6] Also, Burchfield apparently filed a claim against Coroy's policy. On October 10, 2007, Coroy received a letter from Safe Auto listing Burchfield as the claimant and advising Coroy that Safe Auto "will be unable to assist you with any settlement of damages or cost resulting from this accident." Appellant's App. at 13.[1]

> Safe Auto regrets denial of any claim resulting from this accident. We feel, however, we are offered no other recourse because the insured vehicle was being operated by a person who resides in your household, but is not a listed driver on the declarations page.

*Id.*

[7] On February 1, 2007, in cause number 10C01-0702-CT-053, Mack filed a complaint against Burchfield and Amiott alleging that Burchfield negligently operated Amiott's vehicle causing the collision with Mack.

[8] In a separate cause, Safe Auto filed a complaint for declaratory judgment on August 17, 2007, requesting that the trial court determine that Burchfield was a resident of Amiott's household when the accident occurred, and because he was not listed on the policy as an additional driver, Safe Auto had "no duty to defend or indemnify Burchfield or Amiott for any damages or judgment as a result of the collision." Appellant's App. at 5. Safe Auto also requested a declaration that it had "no duty to pay any property damage, comprehensive, or

---

[1] The Appellants' Appendix is not paginated as required by Appellate Rule 51(C). The Appellants have numbered each document as if the document is an exhibit. Therefore, citations to the Appellants' Appendix are to the document number.

collision damages claim as a result of the collision." *Id*. Safe Auto later filed a motion for summary judgment, which the trial court granted on March 9, 2011.

[9] Thereafter, on March 17, 2011, in cause number 10C01-0702-CT-053, Mack filed an amended complaint naming Safe Auto as an additional defendant and adding a claim for uninsured motorist coverage under the terms of Coroy's Safe Auto policy.[2] Mack generally alleged that she was covered under the policy.

[10] On October 3, 2013, Safe Auto filed a motion for summary judgment and argued that Mack's claim was barred by the two-year contractual limitation in the policy for uninsured motorists claims. On May 4, 2014, the trial court granted Safe Auto's motion for summary judgment and concluded that "the Plaintiffs' claims against Safe Auto . . . are barred as they were not filed within the clear, valid, and unambiguous contractual two year limitations period within the Safe Auto Insurance Company Policy for Uninsured Motorists claims." Appellant's App. at 2. Mack now appeals.

## Standard of Review

[11] Our standard of review of summary judgment is well-established:

> When reviewing a grant or denial of a motion for summary judgment our standard of review is the same as it is for the trial court. The moving party "bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." Summary judgment is

---

[2] In its Answer and Affirmative Defenses, Safe Auto reserved the right to raise as a defense that "[a]ll coverage is excluded if the loss arises from the operation of the covered auto by a resident of the insured's household or by any regular user [of] the covered auto unless that person is listed as an additional driver on the declarations page[.]" Appellee's App. p. 6.

improper if the movant fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. In determining whether summary judgment is proper, the reviewing court considers only the evidentiary matter the parties have specifically designated to the trial court. We construe all factual inferences in the non-moving party's favor and resolve all doubts as to the existence of a material issue against the moving party.

*Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012) (internal citations omitted). "The construction of an insurance contract is a question of law for which summary judgment is particularly appropriate." *Illinois Farmers Ins. Co. v. Wiegand*, 808 N.E.2d 180, 184 (Ind. Ct. App. 2004), *trans. denied*.

[12] To resolve the issues in this appeal, we must interpret the terms of Coroy's Safe Auto Insurance Policy. If the policy language of an insurance contract is clear and unambiguous, we will give the language its plain and ordinary meaning. *Wiegand*, 808 N.E.2d at 184. An insurance policy is ambiguous if reasonable persons may honestly differ as to the meaning of the policy language. *Id.* We interpret policy terms from the perspective of an ordinary policyholder of average intelligence. *Id.* Where ambiguity exists, an insurance policy must be strictly construed against the insurer. *Id.* Although insurers may limit coverage, "such limitations must be clearly expressed to be enforceable." *State Auto. Mut. Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 848 (Ind. 2012).

## Discussion and Decision

[13] Mack raises several arguments in her brief challenging the trial court's conclusion that her uninsured motorists coverage claim against Safe Auto is

time barred because it was not filed within two years of the date of the September 21, 2006 accident. She contends that: 1) Safe Auto should have notified her of conditions precedent to making an uninsured motorist claim; 2) Safe Auto waived the two-year contractual limitations period; 3) the contractual limitation deprives Mack of her statutory right to uninsured motorists coverage; and 4) the two-year limitation period is ambiguous and cannot be enforced against her.

## I. Duty to Notify

First, Mack argues that Safe Auto had a duty to notify Mack of conditions precedent to an uninsured motorist claim but failed to do so. Specifically, Mack contends that Safe Auto should have recognized that because Mack was the claimant and not the insured, Safe Auto should have sent "written notice directly to Mack advising her of any intention Safe Auto had of enforcing the insurance policy provisions of which Mack was not a party." Appellant's Br. at 9.

Mack's claim under Coroy's policy was denied on December 28, 2006, because Safe Auto believed that on the date of the accident, Mack was a resident of Coroy's household but was not listed as an additional driver on the policy. Thereafter, on February 2007, Mack filed a complaint against Harold Burchfield and Christine Amiott. Because Burchfield was a resident of Amiott's household but was not listed as a driver on her policy, Safe Auto believed that it had no duty to defend or indemnify Burchfield or Amiott for the accident that occurred on September 21, 2006. In October 2007, Safe Auto sent a copy of its denial letter and a copy of Coroy's Safe Auto policy to Mack's counsel. We

therefore conclude that Mack had adequate notice of the terms of Coroy's Safe Auto uninsured motorists coverage.

## II. Estoppel and Waiver

[16] Next, Mack argues that Safe Auto is estopped from asserting the two-year contractual limitations period and/or that its conduct waived the provision. "It is well settled that contractual provisions of an insurance policy may be waived or that the insurer may be estopped from asserting such provisions." *American Standard Ins. Co. of Wisconsin v. Rogers*, 788 N.E.2d 873, 876 (Ind. Ct. App. 2003). Whether an insurer has waived a policy provision is generally a question of fact. *Id*. at 877. Although the terms "estoppel" and "waiver" are technically distinct, the terms often are used synonymously with respect to insurance matters. *Id.* Waiver is an intentional relinquishment of a known right involving both knowledge of the existence of the right and the intent to relinquish it, while the elements of estoppel are the misleading of a party entitled to rely on the acts or statements in question and a consequent change of position to that party's detriment. *Id.*

[17] Waiver may be implied from the acts, omissions, or conduct of one of the parties to the contract. *Id*. The conduct of an insurer inconsistent with an intention to rely on the requirements of the policy that leads the insured to believe those requirements will not be insisted upon may be sufficient to constitute waiver. *Id*. However, mere silence or inaction on the part of an insurer is not sufficient to constitute an express waiver. *Tate v. Secura Ins.*, 587

N.E.2d 665, 671 (Ind. 1992). Estoppel or implied waiver, based on an insurer's silence, generally requires a showing of resulting prejudice to the insured. *Id.*

[18] Safe Auto denied Mack's claim against Coroy's policy and her claim against Amoitt's policy well within Safe Auto's two-year policy limitation for filing uninsured motorist claims. Appellee's App. p. 8; Appellant's App. at 5. Yet, Mack argues that Safe Auto "waived the two (2) year limitation period" because it "never sent any notice of any kind to Mack who Safe Auto knew was a potential claimant under the UM provisions of the policy." Appellant's Br. at 10.

[19] Safe Auto promptly denied Mack's claim against Amiott's Safe Auto policy because Burchfield was not listed as an additional driver on that policy. Also, approximately three months after the accident, Safe Auto informed Mack that Coroy's uninsured motor's coverage "does not apply to a loss arising while [Coroy's] covered auto is being operated by a resident of [Coroy's] household unless that person is listed as an additional driver on the declarations page." Appellee's App. p. 8. Safe Auto concluded that Mack was a resident of Coroy's household and was not covered under Coroy's policy. Mack was also provided with a copy of the Safe Auto insurance policy.

[20] Mack has not designated any evidence to support her argument that Safe Auto misled Mack or induced her to believe that Safe Auto would not enforce the two-year limitation for uninsured motorists coverage. Also, Mack has not designated any evidence that would establish that Safe Auto's conduct implied

any intention to disregard the policy provisions. Safe Auto promptly denied Mack's claims against Coroy's and Amiott's Safe Auto insurance policies. For all these reasons, we conclude that Safe Auto did not waive and is not estopped from enforcing the two-year contractual limitations period for filing uninsured motorist claims.

## III. The Two-Year Limitation Period and Uninsured Motorist's Statute

[21] Mack argues that the two-year "contractual limitation nullifies the mandatory coverage, full-recovery, remedial nature of the UM statute. The contractual limitation deprives Mack of her statutory right to full compensation for injuries inflicted by a financially irresponsible motorist[;]" therefore, "the contractual limitation period is not enforceable."[3] Appellant's Br. at 11-12. Mack cites to authority that she claims supports her argument, but a review of those cases lead us to the opposite conclusion.

[22] Our supreme court has stated that contractual provisions that shorten the time to commence suit are enforceable "as long as a reasonable time is afforded, except where there is fraud, duress, and the like." *Bradshaw v. Chandler*, 916 N.E.2d 163, 166 (Ind. 2009) ("[W]e enforce limits on coverage where the policy unambiguously favors the insurer's interpretation"). *Cf. Scalf v. Globe American Cas. Co.*, 442 N.E.2d, 8, 10 (Ind. Ct. App. 1982) (holding that "the one-year limitation in the uninsured motorist section of Globe American's policy inhibits

---

[3] The purpose of uninsured and underinsured motorists coverage is "to provide individuals indemnification in the event negligent motorists are not adequately insured for damages that result from motor vehicle accidents." *Lakes v. Grange Mut. Cas. Co.*, 964 N.E.2d 796, 803 (Ind. 2012).

the fulfillment of the purpose that a claimant should have the same rights as he would against an insured third party"). "[C]ontractual limitations shortening the time to commence suit are not favored," but "they do 'protect insurers from policy holders who voice no claim until the year has long since expired, promote early notification while evidence is available, and provide carriers with a basis for forming business judgments concerning claim reserves and premium rates.'" *Bradshaw*, 916 N.E.2d at 167 (quoting *Summers v. Auto-Owners Ins. Co.*, 719 N.E.2d 412, 414 (Ind. Ct. App. 1999)).

[23] The contractual two-year policy limitation does not generally prevent Mack or others like her from obtaining compensation for injuries inflicted by an uninsured motorist. Therefore, we are not persuaded by her argument that the time limitation nullifies the mandatory uninsured motorist coverage required by Indiana Code chapter 27-7-5.

## IV. The Two-Year Policy Limitation

[24] Finally, Mack argues that Safe Auto's two-year policy limitation is ambiguous and contradictory. In pertinent part, Coroy's Safe Auto policy, in a section titled "Suit Against Us" listed under "General Provisions", provides:

> We may not be sued unless there is full compliance with all the terms of this policy. We may not be sued under the liability coverage until your obligation to pay is finally determined either by judgment against the person after actual trial or by written agreement of the person, the claimant and us. No one shall have any right to make us a party to a lawsuit to determine your liability. *Any lawsuit seeking recovery under Part IV, Uninsured/Underinsured Motorists Coverage, must be filed within two (2) years from the date of the auto accident.*

Appellant's App. at 12 (emphasis added).

[25] Under the policy, an uninsured motor vehicle is defined as a "motor vehicle where there is insurance available at the time of the auto accident but the company writing the insurance . . . declines coverage." *Id*. Safe Auto argues that the policy language clearly and unambiguously provides that "all that was necessary to trigger the Uninsured Motorists provisions is a denial of coverage by the underlying insurer." Appellee's Br. at 11.

[26] The cases Mack cites to support her argument involve claims of underinsured, rather than uninsured, motorists coverage. In *Wert v. Meridian Security Insurance Co.*, 997 N.E.2d 1167 (Ind. Ct. App. 2014), *trans. denied*, the Insureds similarly argued that the insurance policy was ambiguous because the two-year contractual limitation provision conflicted with policy language requiring full compliance with the policy terms before the Insureds pursued an underinsured motorists claim.

[27] The policy at issue in *Wert* explicitly stated that no legal action would be permitted against the insurance company unless the Insureds fully complied with the policy terms. In addition, the policy only allowed a lawsuit to be filed against the insurance company if it was filed within two years of the date of the accident. Importantly, the policy also provided that Meridian Insurance would not pay underinsured motorist benefits to its policyholder until the claim was either resolved or settled with the underinsured motorist.

[28] Our court noted the conflict between the policy terms and stated:

> Meridian's policy prohibits the Werts from filing any lawsuit against it for an underinsured-motorist claim until the limits of Offill's liability coverage have been exhausted. At the same time, Meridian attempts to prevent the Werts from filing more than two years after the date of the accident, potentially requiring them to file a lawsuit before they are in full compliance with the policy. Unless a policyholder settles with an underinsured motorist within two years of the collision, these provisions are in direct conflict and therefore ambiguous.

997 N.E.2d at 1171. *See also Clevenger v. Progressive Northwestern Ins. Co.*, 838 N.E.2d 1111 (Ind. Ct. App. 2005) (concluding that the insurance policy was ambiguous because the provision requiring exhaustion of the tortfeasor's policy limits by payment of judgments or settlements conflicted with the provision contractually shortening the limitations period within which an insured could bring an action against Progressive for failing to pay underinsured motorists coverage).

[29] Coroy's underinsured motorists coverage contains similar policy language and provides: "We will pay under this coverage **damages** caused by an **auto accident** with an **underinsured** motor vehicle only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payments of judgments or settlements." Appellant's App. at 12. (emphasis in original). Importantly, Coroy's Safe Auto policy does not contain a similar restriction concerning accidents with uninsured motor vehicles.

[30] Safe Auto denied Mack's claim against Amiott's policy within months of the accident. Specifically, Safe Auto determined that it had no duty to defend or indemnify Burchfield or Amiott for any damages or judgment as a result of the collision because Burchfield was a resident of Amiott's household but was not

listed as an additional driver on her Safe Auto insurance policy. Accordingly, Mack was notified well before the two-year limitation period expired that she was involved in an accident with an "uninsured" driver as that term is defined in Coroy's Safe Auto Policy.

[31] Mack argues that she could not file a lawsuit for uninsured motorists coverage until after the trial court issued the March 9, 2011, declaratory judgment, which determined that Safe Auto had no duty to defend or indemnify Burchfield or Amiott for any damages or judgment as a result of the September 21, 2006, collision. However, none of the language in the policy would support Mack's argument that she was required wait to make a claim against Coroy's uninsured motorists coverage until after the declaratory judgment was issued. If she was a covered Insured under Coroy's Safe Auto policy on the date of the accident, Mack qualified for uninsured motorists coverage under the policy terms once Safe Auto denied coverage under Amiott's policy. In other words, unlike the underinsured motorists coverage discussed in *Wert*, Coroy's uninsured motorists coverage does not include a contractual restriction that the claim must be either resolved or settled with the uninsured motorist before the Insured can file an uninsured motorists claim.

[32] For all of these reasons, we conclude that the two-year limitation is not ambiguous and does not conflict with other coverage provisions in Coroy's Safe Auto policy. Mack was therefore required to file a lawsuit against Safe Auto within two years of the September 21, 2006, accident. Appellant's App. at 12 (stating "[a]ny lawsuit seeking recovery under Part IV, Uninsured/

Underinsured Motorists Coverage, must be filed within two (2) years from the date of the auto accident"). Mack did not file a complaint against Safe Auto for uninsured motorist coverage until May 2011. Accordingly, her lawsuit was not timely filed and is barred.

## Conclusion

[33] The Safe Auto Policy's two-year contractual limitation is not ambiguous; therefore, Mack's complaint against Safe Auto for uninsured motorists coverage filed over four years after the accident is time barred. We therefore affirm the trial court's entry of summary judgment in favor of Safe Auto.

[34] Affirmed.

Najam, J., and Bradford, J., concur.