FILED

Sep 16 2016, 8:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANTS | ATTORNEYS FOR APPELLEES |
|---|---|
| Brian J. Johnson | Lewis S. Wooten |
| Danville, Indiana | Michael R. Giordano |
| | Lewis Wagner, LLP |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

Bradley Starr by Next Friend
Heather Starr-Haller and
Heather Starr-Haller,

*Appellants-Plaintiffs,*

v.

State Farm Mutual Automobile
Insurance Company and the
Indiana Bureau of Motor
Vehicles,

*Appellees-Defendants.*

September 16, 2016

Court of Appeals Case No.
32A05-1605-PL-976

Appeal from the Hendricks
Superior Court

The Honorable Stephenie LeMay-
Luken, Judge

Trial Court Cause No.
32D05-1501-PL-12

**Najam, Judge.**

## Statement of the Case

[1] Heather Starr-Haller, on behalf of herself and her minor son, Bradley, appeals the trial court's entry of summary judgment for State Farm Mutual Automobile

Insurance Company ("State Farm") on Starr-Haller's complaint. Starr-Haller raises a single issue for our review, namely, whether the trial court erred when it entered summary judgment for State Farm. We affirm.

## Facts and Procedural History

Between December of 2011 and September of 2014, Starr-Haller had an automobile insurance policy through State Farm for her 1998 Chevy Blazer. State Farm provided Starr-Haller's coverage in six-month terms. However, State Farm billed Starr-Haller for her coverage on a monthly basis.

On three occasions between October 2012 and June 2014, Starr-Haller failed to timely pay the monthly installment due on her premium. Following each missed installment payment, State Farm mailed Starr-Haller a "Cancellation Notice" that stated both the amount due and a coverage "Cancel Date." Appellants' App. at 147, 149, 151. If Starr-Haller failed to pay her premium by the Cancel Date, the Cancellation Notices explained that the following would occur:

> Payment prior to the date and time of cancellation will reinstate your policies. If paid after that date and time, you will be informed whether your policies have been reinstated and, if so, the exact date and time of reinstatement. *There is no coverage between the date and time of cancellation and the date and time of reinstatement.*

*Id.* (emphasis added).

[4] On each of those three occasions, Starr-Haller failed to make the installment payment required prior to the relevant Cancel Date, but she did pay that amount thereafter during the same policy period. Following each late installment payment, State Farm mailed Starr-Haller a "Reinstatement Notice." *Id.* at 148, 151, 154. Those notices stated again that, because Starr-Haller had made her installment payments after the relevant Cancel Dates, "there [wa]s no coverage between the date and time of Cancellation and the date and time of Reinstatement." *Id.*

[5] According to the terms of Starr-Haller's insurance agreement with State Farm, "if [State Farm] cancel[s] this policy, then premium will be earned on a pro rata basis.[ ]Any unearned premium may be returned within a reasonable time after cancellation. Delay in the return of any unearned premium does not affect the cancellation date." *Id.* at 144. While State Farm accepted each of Starr-Haller's late installment payments in full, it did not refund any portion of the premium for the periods during which her coverage had lapsed.

[6] In August of 2014, Starr-Haller again failed to pay her automobile insurance installment premium. Accordingly, on September 3, State Farm mailed Starr-Haller another Cancellation Notice. According to that Notice, State Farm would cancel Starr-Haller's automobile insurance coverage if she did not pay

her $430 premium[1] by the Cancel Date, September 18. As with the prior Cancellation Notices, the September 3 Cancellation Notice informed Starr-Haller that her failure to pay the amount due by the September 18 Cancel Date would result in a lapse of coverage between that Cancel Date and the date that State Farm reinstated Starr-Haller's coverage following her payment. *Id.* at 156.

[7] Seven weeks later, on October 30, Starr-Haller dropped a check off at her State Farm agent's place of business, after business hours, in the amount of $350. Later that evening, Starr-Haller's minor son, Bradley, was involved in a one-car accident in the Chevy Blazer that resulted in injuries to him and totaled the vehicle. Sometime thereafter, Starr-Haller paid the remaining $80 due. Upon receiving the total balance due, State Farm reinstated Starr-Haller's automobile insurance coverage.[2] State Farm did not refund to Starr-Haller any portion of her premium during that policy term.

[8] Starr-Haller filed a claim with State Farm for coverage relating to the October 30 accident. State Farm denied the claim on the ground that it had cancelled Starr-Haller's coverage, which had not been reinstated as of the accident date. On January 21, 2015, Starr-Haller filed a complaint against State Farm for

---

[1] Starr-Haller had several insurance policies with State Farm, and she paid her premium installments for each of those policies in one combined monthly payment. Of the $430 she owed in September of 2014, $49.48 was for the Chevy Blazer.

[2] This is according to Starr-Haller's affidavit, which, unlike the other claims of reinstatement, is not supported by documentation from State Farm. *See* Appellants' App. at 187. And, on appeal, State Farm disputes that it would have reinstated coverage for a totaled vehicle. Appellee's Br. at 15. We acknowledge State Farm's skepticism of Starr-Haller's statement, but, as she is the summary judgment nonmovant, we are obliged to construe all facts favorable to her, even if the only basis for those facts is a "perfunctory and self-serving" affidavit. *Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014).

breach of contract, along with other claims against other parties. On December 3, State Farm moved for summary judgment, which the trial court granted. The court entered its judgment for State Farm as a final judgment pursuant to Indiana Trial Rule 54(B), and this appeal ensued.

## Discussion and Decision

[9] Starr-Haller asserts that the trial court erred when it entered summary judgment for State Farm. As our supreme court has stated:

> We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

> The initial burden is on the summary-judgment movant to "demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*,

916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (alterations original to *Hughley*).

[10] According to Starr-Haller, State Farm has "waived" its right to deny, and "is estopped from denying[,] coverage for the October 30, 2014[,] accident because of its pattern of repeatedly accepting late and non-conforming [installment] payments . . . and reinstating the policy." Appellants' Br. at 11. More specifically, Starr-Haller asserts:

> The payments made . . . were clearly installment payments towards the policy premium. On the prior occasions, when [Starr-Haller] would make delinquent payments, State Farm would accept the payment[] and send [her] a statement indicating that her coverage had been reinstated as of the date . . . the payment was received, indicating that the policy had "lapsed" from the time the payment was due until it was received . . . .
>
> . . . State Farm, when accepting the [late] payment[s], did not refund or credit [Starr-Haller], pro rata, the portion of the payment for the time for which she was allegedly not covered, but instead [State Farm] accepted the payments in full as if [she] had continuous, uninterrupted coverage . . . .

*Id.* at 14-15. We cannot agree with Starr-Haller's assessment that State Farm's failure to remit her unearned premium on a pro rata basis, without more, demonstrates that State Farm waived its right to deny her coverage for the

October 30 accident or that State Farm should be estopped from denying her that coverage.

[11]     As we have explained:

> It is well settled that contractual provisions of an insurance policy may be waived or that the insurer may be estopped from asserting such provisions. More specifically, provisions in an insurance policy providing for its forfeiture for nonpayment of the premiums is for the insurer's benefit, and may be waived. . . .
>
> * * *
>
> Waiver is generally a question of fact. Where there are no disputed facts and the undisputed facts establish a party is entitled to judgment as a matter of law, however, summary judgment is proper. . . .
>
> "The term 'estoppel' has a meaning distinct from 'waiver' but the terms are often used synonymously with respect to insurance matters." The existence of waiver may be implied from the acts, omissions, or conduct of one of the parties to the contract. The conduct of an insurer inconsistent with an intention to rely on the requirements of the policy that leads the insured to believe that those requirements will not be insisted upon is sufficient to constitute waiver.
>
> * * *
>
> . . . The doctrine of estoppel springs from equitable principles, and it is designed to aid in the administration of justice where, without its aid, injustice might result. Use of the doctrine is not limited to circumstances involving an actual or false representation or concealment of an existing material fact.

> Instead, equitable estoppel is available if one party through his course of conduct knowingly misleads or induces another party to believe and act upon his conduct in good faith and without knowledge of the facts.

*Am. Stand. Ins. Co. v. Rogers*, 788 N.E.2d 873, 876-77, 879 (Ind. Ct. App. 2003) (footnote and citations omitted). Thus, "[a] waiver is an intentional relinquishment of a known right involving both knowledge of the existence of the right and the intent to relinquish it." *Id.* at 877 n.4. "The elements of estoppel are the misleading of a party entitled to rely on the acts or statements in question and a consequent change of position to that party's detriment." *Id.*

[12] In *Rogers*, American Standard issued a policy of automobile insurance to Wilson. On at least eight occasions prior to December of 1997, American Standard had cancelled Wilson's policy due to his failure to timely pay his premiums only to later "re-issue[]" the policy upon Wilson's eventual payment, with no apparent loss of coverage and no refund of a portion of the premiums for the days for which the policy had been cancelled. *Id.* at 877. On December 24, 1997, American Standard sent another cancellation letter to Wilson due to his failure to timely pay his premium. That cancellation letter stated that Wilson's policy would be cancelled on January 8, 1998, unless Wilson paid the total amount owed—$958.80—prior to that date. On December 29, 1997, Wilson submitted a payment in the amount of $374.30. Wilson made no further payments on his account.

On March 4, 1998, Rogers was operating one of Wilson's vehicles with Wilson's permission and was involved in a collision with a vehicle driven by Roberts. Thereafter, American Standard sought a declaratory judgment that its policy with Wilson did not provide coverage for that accident because the policy had been cancelled in January of 1998, approximately two months before the accident. Rogers argued that American Standard had waived its right to deny coverage and, in the alternative, was estopped from denying that coverage.

On appeal, we first held that American Standard's December 1997 cancellation notice made clear that it was not waiving its right to deny future claims of coverage in the event that Wilson failed to timely pay his premium. *Id.* at 877-78. In particular, we noted that the insured "had notice of cancellation prior to his [final, partial] payment"; that he "was further notified that failure to remit the payment . . . in full prior to the cancellation date . . . would result in an interruption of coverage"; and, "[f]ollowing the [insurer's] acceptance of the partial payment, American Standard continued to assert its right to cancellation." *Id.* at 878 n.7. We did not consider the prior cancellations and reissuances relevant to our analysis because there was no evidence that American Standard had reissued the insurance coverage after January of 1998, which was the only cancellation relevant to the accident at issue.

We then held that there was "no evidence to support the conclusion that American Standard" should be estopped from denying coverage. *Id.* at 879. Specifically, we concluded:

American Standard repeatedly informed Wilson that the Policy would be, and was, canceled effective January 8, 1998. There is no evidence to suggest that Wilson was not aware of the fact that the Policy was in fact cancelled or that he acted to his detriment based upon his misunderstanding that the Policy was in full effect. It would be inequitable to extend the Policy two months beyond January 8, 1998[,] when it is clear from the actions of both American Standard and Wilson that the Policy was terminated prior to the date of the accident between Rogers and Roberts.

*Id.*

[16] Unlike here, in *Rogers* the policy had been cancelled and had not been reinstated after the accident had occurred. But the fact pattern in *Rogers* is otherwise similar and provides helpful guidance for the resolution of this case. Nearly two months prior to the October 30 accident, State Farm informed Starr-Haller that the untimely payment of her premium installment would result in State Farm cancelling her coverage until she had paid that installment and State Farm had affirmatively reinstated her coverage. The language in the Cancellation Notice was consistent with three such prior notices State Farm had sent to Starr-Haller. In reinstating Starr-Haller's coverage on each of those three prior occasions, State Farm had expressly informed Starr-Haller that it had cancelled her coverage between the relevant Cancel Dates and Reinstatement Dates. And Starr-Haller's contract with State Farm specifically declared that any "[d]elay [by State Farm] in the return of any unearned premium does not affect the cancellation date." Appellants' App. at 144. In other words, State Farm reserved the right to accept late installment payments

and to reinstate the policy and coverage prospectively but not to reinstate coverage retroactively during the period in which coverage had been cancelled due to nonpayment of the premium.

[17] State Farm's actions with respect to the dates that encompassed the October 30 accident were identical to its actions during the three prior occasions in which State Farm had also cancelled Starr-Haller's coverage. That undisputed evidence plainly shows that State Farm did not intend to relinquish its right to deny Starr-Haller coverage during the period in which those cancellations of coverage had occurred. Likewise, that evidence demonstrates that State Farm's course of conduct did not knowingly mislead or induce Starr-Haller to believe that she would have retroactive coverage if she did not pay her premium installment when due. *See Rogers*, 788 N.E.2d at 879.

[18] Finally, we are not persuaded by Starr-Haller's reliance on State Farm's failure to issue her pro rata refunds of her premiums for the periods in which her coverage had been cancelled. First, as in *Rogers*, there is no question that at the time of the accident State Farm had clearly and affirmatively cancelled Starr-Haller's coverage, regardless of whether State Farm subsequently reinstated the coverage. While the instant facts are unlike *Rogers* in that State Farm eventually did accept Starr-Haller's subsequent installment payments, thereby reinstating her coverage as of the reinstatement date, nonetheless State Farm made it clear to Starr-Haller that such late payments did not reinstate coverage during the periods in which her coverage had lapsed due to nonpayment of the

installment then due, and State Farm's position was the same as its position on the three prior occasions.

[19] There is nothing in State Farm's conduct that would have given Starr-Haller a right to rely upon anything other than the express terms of her insurance contract. Indeed, Starr-Haller's argument that her unrefunded payments entitle her to coverage contravenes her contract with State Farm. Again, in the contract State Farm expressly reserved the right to accept late installment payments without reinstating coverage retroactively, declaring that any "[d]elay [by State Farm] in the return of any unearned premium does not affect the cancellation date." Appellants' App. at 144. At best, Starr-Haller has demonstrated that she is entitled to a refund from State Farm for those unearned premium payments,[3] but she has not demonstrated that she is entitled to coverage.

[20] In sum, the undisputed designated evidence shows that State Farm did not waive its right to deny Starr-Haller the coverage she now claims. The undisputed designated evidence likewise shows that State Farm is not estopped from denying her that coverage. Accordingly, State Farm met its burden to demonstrate that it is entitled to judgment as a matter of law, and Starr-Haller has failed to designate evidence to create a genuine issue of material fact on her claims against State Farm. Thus, we affirm the trial court's entry of summary judgment for State Farm.

---

[3] Starr-Haller has not sought such a refund in her complaint.

Affirmed.

Vaidik, C.J., and Baker, J., concur.